### Levering McCormick v. Ellen McCormick

[553 A.2d 1098]

No. 86-538

Present: **Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.) and Connarn, D.J. (Ret.), Specially Assigned**

Opinion Filed September 30, 1988

*Manfred W. Ehrich, Jr.*, Bennington, for Plaintiff-Appellee.

*Mary C. Ashcroft*, Rutland, for Defendant-Appellant.

**Dooley, J.** Levering and Ellen McCormick were divorced in December of 1980. Dissatisfied with the support order contained in the divorce decree, defendant Ellen McCormick moved for modification of the divorce decree in May of 1985 on the grounds that circumstances have changed. The Windham Superior Court denied the petition on October 16, 1986, and defendant appealed to this Court. We reverse and remand for further proceedings.

The 1980 support order was based on a stipulation. It provided that plaintiff Levering McCormick would pay child support of $35 per week for each of the two children, ages 14 and 10 at the time of the modification hearing in 1986, when full-time custody was with Ellen McCormick under their joint custody arrangement. In fact, defendant took custody of the children in September of 1981 and has been paid $70 per week ever since.

At the time of the divorce, plaintiff was a teacher in a private school earning $19,000 per year. In addition, he received income from stocks of around $1,000 per year. At that time, defendant had moved from their Londonderry, Vermont home to Darien, Connecticut where she was earning approximately $21,000 as an executive secretary. She also had some trust fund income of about $1,000 per year. Under the divorce order, the parties sold their Londonderry home with defendant receiving $30,000 and plaintiff receiving $10,000.

In 1982, defendant suffered a brain tumor which was removed by surgery. This medical condition, although successfully corrected by surgery, made it difficult for defendant to work. Her

wage income fell to $14,000 in 1983. It recovered to about $20,800 in 1985. She was projected to earn $19,000 in 1986.

Meanwhile, defendant had a significant increase in expenses. Her rent went from $575 in 1981 to $1,100 in 1985. To reduce housing costs and obtain a better living situation, she entered into a living arrangement with a man under which they shared the expense of a house which rented for $1,800 per month. Housing was the major, but not the only, increased living cost she testified to at the modification hearing. Because her income was not meeting her expenses, she was regularly drawing on the financial reserves established with the proceeds of the house sale.

Plaintiff's financial situation improved significantly. In February of 1982, an uncle died and left plaintiff an inheritance. Plaintiff received $422,000 in 1982 and an additional $125,000 in 1985. He remarried and purchased a substantial house in Manchester, Vermont. Even though he ceased receiving a regular salary for his teaching (although he continued to teach), his income went up to reflect the earnings on the inheritance. In 1983, his income was $70,000; in 1984 $53,000; and in 1985 $37,000. As of June of 1986, plaintiff's invested assets had a value slightly in excess of $400,000.

Although the 1980 order required plaintiff to pay child support only when defendant had full-time custody, he paid support even when the children were with him. Each child was with plaintiff over 100 days in 1986. As his circumstances improved, plaintiff began contributing directly to expenses of the children. He estimated that for 1984 he contributed $23,471 to the support of the children. In addition to the $3,650 annual child support bill, the major components of that contribution were $10,200 for tuition for private schools, almost $2,500 for clothes and $1,700 for entertainment expenses including skiing costs and sports equipment.

The trial court found the above facts and also found that defendant's increased expenses were caused by her voluntary move to a high cost of living area in Connecticut. It concluded that the children's standard of living had actually improved since the divorce because of the direct payments from plaintiff to the children. The court also concluded that defendant was receiving more support than the order required because the plaintiff made a payment every week even when the children were with him or, in the

case of one child, at boarding school[1] and further concluded that defendant "should be able to maintain the children's standard of living in a manner at least equal to that that prevailed prior to the divorce." Finally, the court concluded that defendant's financial hardship was due to her "demands for herself." On the basis of these findings and conclusions, the petition was dismissed.

On appeal, defendant raises four claims of error. Three claims relate to the fact findings: (1) the trial court erred in finding that living expenses in Connecticut are higher than in Vermont; (2) the trial court erred in failing to make findings related to defendant's income and expenses; and (3) the trial court failed to consider and make findings on each changed circumstance raised by defendant. Defendant's fourth claim of error is that the court's conclusions are contrary to the Vermont law on support. While we agree with defendant that the conclusions of law in this case do not fully address the legal standard for modification of support, we start with the factual attacks made by defendant since the case must be remanded.

In reviewing findings of fact, we must take the evidence in the light most favorable to the prevailing party and exclude the effect of modifying evidence. Only if thereafter the findings are clearly erroneous can they be overturned. See *Sutton* v. *Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987). The findings relating to the cost of living in Connecticut are based in large part on the testimony of plaintiff elicited on cross-examination by defendant's counsel. They are not clearly erroneous.

Defendant's second and third claims of error are interrelated. In each, defendant alleges that the court failed to fully consider her claims for changed circumstances warranting a modification of the support order. In the second claim, the defendant argues that the court failed to find defendant's living expenses, her 1984

---

[1] The trial court did not explain its construction of the child support provision, and we find it vague on this point, especially in light of the court's finding that the children lived with the defendant from "September, 1981 to present." The actual language of the order provides that whenever one party "shall have custody," the other has visitation rights and the right to custody during certain weekend and vacation periods. The support order then requires payment by plaintiff whenever defendant "shall have full-time custody." One possible construction is that plaintiff owes support except for a period when he has custody other than the temporary custody on weekends and during vacations. This construction is reasonable because defendant must provide a home for the children even if they temporarily visit plaintiff or go to boarding school.

income, the effect of her illness on her income and the financial participation of the man with whom she was living. In the third claim, she reiterates the omissions of her income and expenditures and adds that the court failed to consider fully plaintiff's inheritance, his voluntary cessation of earned income and the growing disparity between the resources and lifestyles of the parties.

The court is required to find those facts that are "essential to the disposition of the issues properly before the court." *Jacobs* v. *Jacobs*, 144 Vt. 124, 127, 473 A.2d 1165, 1167 (1984). The fact that the court failed to adopt proposed findings of a party is not cause for reversal since "[t]he court is free to chose the evidence it finds persuasive." *Darken* v. *Mooney*, 144 Vt. 561, 568, 481 A.2d 407, 412 (1984). Given the court's conclusion on the cause of defendant's increase in living expenses, it was unnecessary for the court to find precisely the amount of those expenses. Nor did the court err in failing to find the extent of the financial participation of the man with whom defendant was living. The court made the findings necessary to dispose of the issues before it consistent with its conclusions on those issues.

We also conclude that the failure of the court to find defendant's 1984 income was harmless in light of the income findings the court did make. Any support increase the court ordered would be retroactive only to the date the petition for modification was filed and could not cover the time while defendant was recuperating from the brain tumor. See *Towne* v. *Towne*, 150 Vt. 286, 288, 552 A.2d 404, 406 (1988); *DeKoeyer* v. *DeKoeyer*, 146 Vt. 493, 495, 507 A.2d 962, 963-64 (1986) ("The circumstances of the parties prior to the divorce and any interim changes that were not in existence at the hearing were irrelevant."). Thus, it was not necessary for the court to find defendant's 1984 income or her loss of income from the discovery of the tumor up to the time she filed her petition.

To the extent defendant's third claim is based on similar alleged inadequacies in the court's findings, we cannot find any error. The court detailed plaintiff's financial circumstances and found his source of income. The disparity in the resources available to the parties is apparent from the findings.

This leaves only the defendant's claim that the court failed to follow the applicable law on modification of support orders. At the time of the petition, modification petitions were gov-

erned by 15 V.S.A. § 651(e), which provided that a support order could be modified "upon a showing of a real, substantial, and unanticipated change of circumstances." Defendant argues that a change of circumstances was present in this case as a matter of law based on her reduction in income caused by the brain tumor, her increased living expenses, plaintiff's large inheritance, his voluntary cessation of employment income and the difference in the lifestyles of the parties.

The presence of a change in circumstances is a jurisdictional prerequisite to consideration of a petition to modify. See *Hayes* v. *Hayes,* 144 Vt. 332, 335, 476 A.2d 135, 138 (1984) (custody). Once the court finds that the requisite changed circumstances are present, the court has broad discretion to determine whether it will modify the order and the extent of the modification. See *DeKoeyer,* 146 Vt. at 497, 507 A.2d at 964.

In this case, we agree that "real, substantial and unanticipated" changed circumstances were present as a matter of law, even when we discount, as did the court below, defendant's increased living expenses.[2] The circumstances here are a more extreme example of those present in *Sylvia* v. *Sylvia,* 146 Vt. 596, 508 A.2d 708 (1986), where we upheld a trial court determination of changed circumstances. In *Sylvia,* as here, defendant's wife suffered a loss of earning capacity as a result of an illness. We found "loss of an anticipated employment qualifies as an unanticipated change of circumstances." *Sylvia,* 146 Vt. at 597, 508 A.2d at 709. Although defendant's illness in this case appears to have no permanent effect on her capacity to work, her ability to improve her economic position has been set back substantially so she is seeking no earnings growth.

In *Sylvia,* as here, the plaintiff had a substantial increase in income (175%) which was not anticipated. The plaintiff's income in this case, although it fluctuates based on the return on investments, has shown a much greater increase than in *Sylvia.* At the time of the petition to modify in this case, Vermont did not yet have in effect child support guidelines although the authority to create them had been enacted by the legislature. See 15 V.S.A. §

---

[2] Even if we accept that much of the increase was not voluntarily assumed, we could not hold that increases in the cost of living were unanticipated or unexpected as a matter of law. See *Sylvia* v. *Sylvia,* 146 Vt. 596, 597, 508 A.2d 708, 708 (1986).

654.[3] Those guidelines have now been promulgated by the Secretary of Human Services. See Secretary of Human Services, *Child Support Guidelines* (April 1, 1987). Under these guidelines, in the year of plaintiff's lowest income — 1985 — he would have a presumed support obligation of over $600 per month assuming that defendant is the full-time custodian.[4]

We have in this case an added factor not present in *Sylvia.* Plaintiff is apparently voluntarily working without salary although he does get skiing privileges and medical insurance. In *Jacobs*, 144 Vt. at 127, 473 A.2d at 1167, this Court held that voluntary reduction of income could not be grounds for reducing a stipulated support order "absent a sufficient reason for the sacrificing of income." Just as we did not allow cessation of income to result in a reduction of support, we cannot allow a voluntary cessation to prevent an otherwise warranted increase in support payments.

The changed circumstances in this case are so substantial that we hold that the trigger of § 651(e) was present as a matter of law. We recognize that this conclusion opens the inquiry rather than closing it. Once changed circumstances are found, the court must go on to consider whether modification is appropriate and how the modification, if any, should be framed. The issues are difficult in this case. To a great extent, defendant is seeking support to maintain *her* living situation as opposed to that of the children. On the other hand, we must look at child support from the perspective of the children and, as the trial court found, the children's living situation has improved as plaintiff's wealth and income grew. Ordinarily, however, child support should be paid through the custodial parent, and not directly, and the trial court found that defendant has been the custodial parent since 1981.[5]

---

[3] The new statutory scheme, effective April 1, 1987, also provides that a variation of 15% or more between a support obligation and the applicable amount calculated under the guidelines constitutes a change of circumstances allowing modification in support obligation. 15 V.S.A. § 660(b). The statute has no effect on this case, even after April 1st of 1987, because we have found that a change of circumstances was present under the old statute. 15 V.S.A. § 651(c).

[4] This amount is calculated combining the parties' income for 1985, making the appropriate deductions, selecting the total guideline support amount from the table and allocating it to the parties in relation to their income. The calculation is approximate.

[5] The new statutory scheme also has a provision on allocating support obligations in joint custody situations that may apply here. See 15 V.S.A. § 657(a).

See 15 V.S.A. § 656(a) (noncustodial parent is ordered to pay his or her share to the custodial parent). There is nothing in the current order that requires plaintiff to maintain the direct payments to the children, so he could discontinue them without immediate consequence. Even if child support payments to the defendant were not increased, it might be appropriate to amend the order to itemize the plaintiff's obligation for expenses of the children.

It is impossible for us to determine the court's conclusions on the discretionary choices before it in this case. The conclusions fail to specify whether the court found changed circumstances under § 651(e) so we cannot determine whether it properly exercised its discretion. We are left to speculate as to the basis upon which the trial court made its findings and reached its conclusions and this we will not do. See *Mayer* v. *Mayer*, 144 Vt. 214, 216, 475 A.2d 238, 239-40 (1984); *Jensen* v. *Jensen*, 139 Vt. 551, 553, 433 A.2d 258, 260 (1981). Accordingly, we must reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*