## Levering McCormick v. Ellen McCormick

[621 A.2d 238]

No. 91-371

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 8, 1993

474

*Susan M. Murray* of *Langrock Sperry & Wool*, Middlebury, for Plaintiff-Appellant.

*Mary C. Ashcroft*, Rutland, for Defendant-Appellee.

**Allen, C.J.** Appellant father appeals from a trial court decision awarding mother a total of $81,523.95 in past due child sup-

port and attorney's fees. Father argues that the trial court improperly imputed income based on his expenses, erred in awarding future support, and failed to credit him for payments made for the benefit of the children. We affirm the imputation but remand for recalculation of father's income excluding tuition payments made for his children and for reconsideration of the future support award. We reject mother's cross-appeals for exemplary damages, reimbursement for depletion of assets, future tuition for the children, and interest on the principal amounts of retroactive support.

The parties were divorced in 1980, and the father was ordered to pay $35 per week for each of their two children whenever mother had full-time physical custody. The parties sold their house in Vermont, and mother moved to Connecticut. In 1982, mother suffered a brain tumor, which was successfully treated, but caused a temporary decline in her income and an increase in her expenses. Meanwhile, father's assets and income both increased during and after 1982 from inheritances and gifts. His expenditures on behalf of the children also increased during these years. Father at all times maintained payment of the $70 per week ordered by the court.

In 1985, mother moved to modify the child support provisions of the decree on grounds of changed circumstances. The trial court dismissed the petition, finding that mother's increased expenses were caused by her voluntary move to Connecticut and that she was receiving more support than required by the order. In *McCormick v. McCormick*, 150 Vt. 431, 436, 553 A.2d 1098, 1102 (1988), we reversed, holding that "real, substantial and unanticipated" changed circumstances were present as a matter of law, based on reductions in income from mother's unexpected illness, an unanticipated increase in father's income, and a voluntary cessation of father's earned income as a teacher. We remanded the matter to the trial court "to consider whether modification is appropriate and how the modification, if any, should be framed." *Id.* at 437, 553 A.2d at 1102.

On remand, the trial court found that during the years following the divorce, father's expenses exceeded his income by $428,000 and that he had expended all but $120,000 of a total of $547,000 which he had received from another family member in 1982 and 1985. The court imputed income to the father based on

his expenses for the years in question and concluded that a gross amount of $92,654.10 was due for the period from May 1985 through June 30, 1991. That amount was reduced by child support payment credits of $23,660 for the same period, leaving a balance of $68,994.10. After allowing father additional credits for medical payments for the children, the court entered judgment for mother in the amount of $65,523.95, together with an award for attorney's fees, which has not been appealed.

Father appealed the award of additional child support for the years 1985 to 1990, the level of support decreed for the parties' son for 1991 and the failure to credit him for payments made on behalf of the children. Mother cross-appealed the denial of (1) exemplary damages, (2) reimbursement for depletion of her assets, (3) an order requiring payment of future tuition and other expenses for the children, and (4) interest on the principal amounts of retroactive support.

## I. Father's Appeal

■■ Father first argues that the trial court erred by including as income monies he received from the sale of stock. We agree with father that under most circumstances, income would not include proceeds from the sale of an asset. "Income" is defined in 15 V.S.A. § 653(5)(A)(i) to include

income from any source, including, but not limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, ... gifts, prizes, and spousal support actually received. ...

While capital gains are considered income, amounts received in exchange for an asset are not. The inquiry, however, does not end here. The trial court concluded that:

In each of the years from 1985 to 1990 there is a significant discrepancy between the amount of income claimed by the [father] and his total expenses. The Court concludes that the circumstances presented by this case require that income greater than that claimed by the [father] be imputed to him. In other words, the Court must infer that income not disclosed by the evidence was nevertheless actually available to the [father]. . . The [father] has failed to

present the Court with an accurate picture of his finances. Rather, [father] has presented conflicting testimony and exhibits as to his actual income and expenses. The only thing that has consistently remained clear is that [father] leads a very comfortable life. In light of the [father's] failure to provide the Court with a clear picture of his financial resources and his continued high level of annual expenditures, the Court will impute income to [father] as necessary to meet his claimed annual expenses.

■■  We believe that the court, under the circumstances presented, was justified in imputing income to father in amounts equal to his claimed annual expenses. Lifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate. See *Thomsen v. Thomsen*, 429 N.E.2d 372, 373 (Mass. App. Ct. 1981) (judge found change in circumstances sufficient to award an increase in alimony where, although husband's reported income had not increased since the divorce, husband was principal employee of agency, husband received significant benefits from the agency, and husband's "reported income is a figure . . . within his control"); *Johnson v. Fritz*, 406 N.W.2d 614, 616 (Minn. Ct. App. 1987) (in determining whether a substantial change of circumstances exists for child support modifications, "a court can take into account the lifestyle of a sole business owner if the figures offered do not comport with the evidence of that person's lifestyle"). Because father's evidence was not credible, we find no error in the court's inclusion of that money as income to father or the court's decision to apply income imputation based on expenses.

Father next argues that the trial court erred in failing to apply the Vermont support guidelines prescribed by the Secretary of Human Services pursuant to 15 V.S.A. § 654. He concedes, arguendo, the accuracy of the court's income figures, but contends that the parties' "combined available income" for the years in question fell within the maximum range given the guidelines and that use of the tables is mandated by 15 V.S.A. § 656(d). We need not decide whether the court erred in concluding that the combined income exceeded the highest guideline calculation because, for the reasons that follow, the matter must be remanded for a recalculation.

■■ Included in the imputation of father's income were amounts that he had voluntarily paid for tuition for the children to attend private schools. As we explain below, the court was not required to credit father with these payments. We conclude, however, that fundamental fairness requires that, where income is imputed based on expenses, father's imputed income be reduced by the amount actually expended by him for these payments. Tuition payments for one's children are not the type of personal expense upon which imputed income should be based. The school expense resulted from the desire of both parents to have the children attend private schools. If, upon recalculation, the combined available income is within the support guidelines, the presumption applies and they should be used, *Ainsworth v. Ainsworth*, 154 Vt. 103, 108, 574 A.2d 772, 776 (1990), unless the court finds them to be unfair to the children or the parties. 15 V.S.A. § 659.

■ ■ Father also contends that he is entitled to credit against any back support award payments made by him for the benefit of the children in addition to the tuition actually paid. We do not agree. There is no basis to conclude that the mother consented or would have consented to any offset against support for the amount of these payments. Father was obligated to make support payments through the mother and was therefore not entitled to credits for expenditures made voluntarily for the children. 15 V.S.A. § 657(a); see *Nevitt v. Nevitt*, 155 Vt. 391, 396–97, 584 A.2d 1134, 1137–38 (1990). Voluntary expenditures by the spouse paying support should not be permitted as a credit against support payments mandated by order. *O'Brien v. Freiley*, 387 N.W.2d 85, 88–89 (Wis. Ct. App. 1986), *superseded by statute on other grounds as stated in Woodmansee v. Woodmansee*, 444 N.W.2d 393, 394 (Wis. Ct. App. 1989). If voluntary payments by the obligor spouse were allowed as credits, payments to the custodial parent could be curtailed at the whim of the other parent. See *Guri v. Guri*, 448 A.2d 370, 372 (N.H. 1982).

■■ Father finally contends that the court erred in awarding $241 per week for the parties' son for the period after July 1991 because the court does not explain how it arrived at that figure. We agree. The court announced the $241 weekly figure

with no explanation, nor can its rationale be readily deduced from the level of prior payments in years with similar income figures, as defendant suggests. As the court did not "clearly specify the basis for its support decision so we are not left to speculate on the rationale," *Ainsworth v. Ainsworth*, 154 Vt. at 114, 574 A.2d at 779, the matter must be remanded for reconsideration of this part of the court's order.

## II. Mother's Cross-Appeal

### A.

Mother, on cross-appeal, argues that the trial court erred in failing to award her punitive damages. Punitive or exemplary damages presuppose the existence of actual damages. *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 164, 422 A.2d 940, 942 (1980). "Damages" generally are defined as "pecuniary compensation recoverable for injury or loss suffered through the unlawful act, omission, or negligence of another." *York v. Oregon State Correction Institution*, 651 P.2d 1376, 1378 (Or. Ct. App. 1982); see *Kramer v. Chabot*, 152 Vt. 53, 55–56, 564 A.2d 292, 293 (1989). Mother has not established the existence of actual damages. Her petition was for an increase in child support payments, based on changed circumstances. "Support" is defined in 15 V.S.A. § 780(6) as follows:

(6) "Support" means periodic payments ordered for the support of dependent children or, for the purposes of sections 783–790 of this title only, a spouse. Support includes periodic amounts to be applied toward unpaid arrearages.

The award of support, whether in an initial or modified order, is not an award of damages.

Further, mother did not make out a claim for wrongful conduct that is independent of the issues litigated in the divorce action. Punitive or exemplary damages will be awarded only upon a finding that a party exhibited "conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of [a party's] rights." *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 297, 576 A.2d 441, 449 (1990). The trial court declined to make such a finding in this case, and its decision to deny the award of punitive damages

will be affirmed unless clearly erroneous. *Bender v. Bender*, 471 A.2d 335, 337 (Md. Ct. Spec. App.), *cert. denied*, 476 A.2d 721 (Md. 1984); see, generally, *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 5, 580 A.2d 971, 974 (1990).

The essence of mother's punitive or exemplary damage claim is that father "sought to control [mother]'s life years after divorce was final. He engaged in a prolonged legal battle for six years with [mother] . . . ." Much of the claim for punitive damages rests on the disparity in the parties' financial circumstances, including the accusation that the difference in the parties' work ethic—mother's industriousness versus father's casual attitude toward work—has had a damaging effect on the parties' children. These assertions, and father's responses, however, were the essence of the parties' dispute on the merits, and do not give rise to an independent claim that father had caused injury to mother. There was no error.

## B.

Mother argues that the court erred in refusing to reimburse her for depletion of her savings during the years following the parties' divorce. As to this claim the court stated:

> There is clear evidence that [mother's] assets have been depleted over the years. There is not, however, clear evidence as to how those assets were spent.

The court attributed some of the decline to mother's illness, and noted that an order for reimbursement would in any case constitute a double recovery since it was the purpose of the retroactive support award to make her whole. We agree.

## C.

Mother also contends that the trial court erred in refusing to order father to pay private school tuition, to continue child support and health insurance until the children finish college, or to provide security for prospective child support.

The trial court correctly concluded that it lacked authority to enter a support order effective beyond the later of a child's majority or termination of secondary education. See 15 V.S.A. § 658(c). The request for private school tuition was made

for the first time during defendant's testimony, and mother does not cite authority for mandatory inclusion of private school tuition in a support order. "Extraordinary expenses" are included within the definition of "basic support obligation" within 15 V.S.A. § 653(4), but only extraordinary education expenses are included, and private school tuition does not typically fall within this definition. There was no evidentiary basis for mother's request for security for future support payments. Father has never missed a support payment and in fact contributed additional sums for the children's support and welfare, even if those sums were voluntary and not allowable as credits to offset his obligation to make additional support payments for the period 1985-1990. The grant of security for the payment of support is discretionary, and no abuse has been shown.

### D.

Finally, mother argues that the trial court erred when it failed to award interest on the principal amounts of retroactive support. We decline to address this contention other than to observe that interest is not the unqualified right of the prevailing party. "'Instead, in matters of interest not involving contractual obligation[s] . . ., a trial judge is invested with broad discretion to allow interest in accordance with principles of equity.'" *Legault v. Legault*, 142 Vt. 525, 532, 459 A.2d 980, 984–85 (1983) (quoting *Corallo v. Essex County Welfare Board*, 356 A.2d 426, 427 (N.J. Super. 1976) (citations omitted)).

*Reversed in part and remanded.*