### Judith Smith v. Potter Stewart, Jr.

[684 A.2d 265]

No. 94-693

Present: Allen, C.J., Dooley, Morse and Johnson, JJ., and Norton, Supr. J., Specially Assigned

Opinion Filed August 2, 1996

*William M. McCarty* and *Mark T. Doherty* of *McCarty Law Offices, P.C.*, Brattleboro, for Plaintiff-Appellee.

*William M. Dorsch* of *Mickenberg, Dunn, Sirotkin & Dorsch,* Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant, Potter Stewart, Jr., appeals the decision of the Windham Family Court awarding increased child support for 1993 and 1994 to his former wife, plaintiff Judith Smith. He argues that the court erred by awarding support beyond the guideline maximum, by extrapolating from the guidelines, by not basing the guideline calculation on shared custody, and by awarding attorney's fees to plaintiff. We affirm the court's grant of attorney's fees and refusal to apply the shared custody guidelines, but reverse the child support award and remand for recalculation consistent with this opinion.

The parties were married in 1971 and divorced in 1991. They have two sons whose physical custody was awarded to plaintiff but who are frequently with defendant when not in school. This case involves calculation of support for the children for 1993 and 1994 in accordance with the 1991 divorce order. The order, which was based on a stipulation of the parties, provides:

> The Defendant shall pay to the Plaintiff child support in accordance with the Vermont Child Support Guidelines. Said support shall be recalculated annually on January 1 or as soon thereafter as possible. Each party shall provide the other with income and tax information necessary to recalculate said support amount. The amount recalculated shall be retroactive to January 1 of the relevant year. The support calculation shall include actual capital and operating losses and expenses and shall not be based on shared custody guidelines. Provided, however, that the support shall be $1,283.00 per month through 31 December 1991, which is a compromise amount without reliance on the guidelines.

The parties agreed to this arrangement to accommodate defendant's fluctuating salary. In December 1991, the parties agreed to an amendment to the provision to provide, among other matters, that "income shall be as defined in 15 V.S.A. § 653(5)(A) with the exception of imputed income and gifts, which shall not be considered" and "[i]ncome computations shall also include the defendant's 'out of pocket losses,' if any, from the condominium investments." In connection with this amendment, defendant again agreed that the shared custody guidelines did not apply to the support calculation.

The 1991 order also requires that defendant pay maintenance. He is required to pay $1,600 per month through December 31, 1996, and $1,150 per month thereafter through December 31, 2008 when the maintenance obligation ceases.

Defendant's income in 1991 was approximately $146,000. In 1992, it rose to $299,951. In 1993, it fell to $180,523. In February 1994, defendant left his law firm and started his own practice. He estimated that he would earn approximately $75,000 in 1994 from this practice. Plaintiff's income in 1992 was $36,952, including the maintenance payments; in 1993, it dropped to $29,480.

In 1992, defendant paid child support in the amount of $337 per week, based on his 1991 income. Defendant filed his 1992 income tax return in April 1993, but did not give plaintiff a copy until July 1993.

He continued the preexisting child support amount until July 16, when he raised it to $434 per week. During 1993, defendant paid $19,949 in child support.

In 1994, defendant lowered his child support payment when he left his firm to start his own practice. Since January he has been paying $128 per week. He provided his 1993 income tax returns in May 1994.

On January 12, 1994, defendant moved that the maintenance award be reduced because he no longer had the ability to comply with it since his income had declined with the start of his new practice. He also requested that the court determine the proper amount of child support pursuant to the 1991 order. On January 26, 1994, plaintiff responded by moving to enforce the 1991 order with respect to child support for the years 1993 and 1994. Plaintiff also sought a maintenance supplement and attorney's fees.

Following a hearing, the family court ruled on these motions on December 1, 1994, denying defendant's motion to modify the maintenance award and plaintiff's motion for a maintenance supplement. It granted plaintiff's motion to enforce the 1991 child support order and calculated the outstanding arrearage as $20,973.44 for 1993 and $9,180 for the 32 weeks of 1994 which preceded the hearing. It set the on-going child support amount for 1994 at $434 per week and awarded plaintiff $8,745.58 in attorney's fees.

## A

Defendant first argues that the court erred by awarding child support in an amount greater than the guideline maximum. He claims that the court may award support beyond the guideline maximum only if it finds that the needs of the children have not been met, and that no such finding was or could have been made here. This argument requires us to revisit the purposes and policies of our child support system.

In 1986, the Legislature adopted a new child support system which established guidelines for determining the financial support obligations of parents in most cases. See 15 V.S.A. §§ 650, 653. The guideline system has three main purposes: to ensure children receive the same proportion of parental income after separation or divorce as they would have received if the parents had never separated, to eliminate discrepancies in awards between children in similar circumstances and to improve the efficiency of child support adjudication. See *Grimes v. Grimes*, 159 Vt. 399, 403, 621 A.2d 211, 213 (1992); *Ainsworth v. Ainsworth*, 154 Vt. 103, 106, 574 A.2d 772, 774-75 (1990).

The central component of the system is a set of tables which reflect "the percent of combined available income which parents living in the same household in Vermont ordinarily spend on their children." 15 V.S.A. § 654. The table amounts are expressed in dollars and are "presumed to be the total support obligation of parents." *Id.* When the events in this case took place, the tables covered combined available incomes up to $11,575 per month. See Office of Child Support Services, Child Support Guidelines § 1002, at 5 (1990) [hereinafter *Guidelines*].[1] When the combined available income of the parents exceeds the "uppermost levels of the support guideline," the "court may use its discretion in determining child support." 15 V.S.A. § 656(d).

Before addressing defendant's specific argument, it is important to understand how the family court approached this case. Plaintiff argued consistently that she was seeking enforcement of the 1991 agreement and order, and not requesting a modification of the child support provisions of the order. Defendant has not been consistent on this point, but a number of his arguments are premised on his claim that the family court modified the 1991 order by setting a support amount above the guideline maximum. The family court clearly believed it was enforcing, and not modifying, the 1991 order.

We conclude that the family court acted reasonably and was correct in its approach. See *C.D. v. N.M.*, 160 Vt. 495, 501, 631 A.2d 848, 852 (1993) (if trial court's construction of child support agreement is reasonable, it must be upheld). The 1991 order specifies defendant would pay support "in accordance with the Vermont Child Support Guidelines." Defendant interprets these words to mean that he is required to pay no higher than the maximum amount provided for in the tables irrespective of his income. This is an unreasonable interpretation of the language. The guideline maximum is not a cap on child support to be paid. See *Archer v. Archer*, 813 P.2d 1059, 1061 (Okla. Ct. App. 1991). Instead it represents the highest income for which tables are useful or appropriate. When the 1991 agreement and order determined support in accordance with the guidelines, it necessarily included the full guideline system, including the power of the court to set amounts above the tables when the income of the parties exceeds the guideline maximum. Thus, the family court was enforcing the 1991 order according to its terms and not modifying it.

---

[1] The guidelines have since been updated and appear at 4 Code of Vermont Rules 13161001 (March, 1996). All references in the text are to the 1990 version which was in effect for the support years involved.

■ ■ No matter how the action is characterized, defendant acknowledges that the statute gives the trial court discretion to set a support level above that provided for at the highest income of the guidelines. He argues, however, that this discretion may be exercised only when there is demonstrated need for the children to receive the additional amount. We disagree that the sole criterion for determining the support amount for above-guideline-income cases is the need of the child. The children are entitled to share in family income if it grows after the parents separate. See *C.D.*, 160 Vt. at 500, 631 A.2d at 851 (amount of child support should be based on policy of meeting needs of children and having them share family income). Thus, the children are entitled to a part of the "fruits of one parent's good fortune after a divorce." *In re Marriage of Nimmo*, 891 P.2d 1002, 1007 (Colo. 1995); see also *Galbis v. Nadal*, 626 A.2d 26, 31 (D.C. Ct. App. 1993) (children are "entitled to a level of support commensurate with the income and lifestyle of the parents"); *Miller v. Schou*, 616 So. 2d 436, 437 (Fla. 1993) (child has a right to share in the good fortune of his or her parent).

Moreover, the term "need" must be used broadly to reflect the general standard of living of the family. Children are not expected to live at a minimal level of comfort while one or more parents enjoy a luxury lifestyle. *In re Marriage of Lee*, 615 N.E.2d 1314, 1326 (Ill. Ct. App. 1993). A child's needs "increase proportionally with their opportunity to participate in educational, cultural, and recreational activities." *Bagley v. Bagley*, 632 A.2d 229, 239 (Md. Ct. Spec. App. 1993); see also *Branch v. Jackson*, 629 A.2d 170, 171 (Pa. Super. Ct. 1993) (reasonable needs of affluent child may include items that would be frivolous for children of less well-off parents). The fact that the basic needs of defendant's children are met does not mean that they do not have needs that should be addressed by a further increase in child support.

We are also concerned that defendant's position would actually reward the noncustodial parent for having failed to share his increase in income. It would be unreasonable to expect plaintiff to spend more money on the children in anticipation of its coerced receipt from defendant. See *Nash v. Mulle*, 846 S.W.2d 803, 806 (Tenn. 1993). We could require the custodial parent to present lists of items she would purchase for the children if the additional support were received. However, while such a list might be helpful to the trial court, we would not rely on it as the sole basis for determining a support amount.

Much of defendant's argument is based on his claim that any additional support will simply go to plaintiff as disguised additional

maintenance. There is nothing in the family court decision to suggest that the increased support was intended to be used by plaintiff and not for the support of the children. Although increased child support necessarily has an incidental benefit for the custodial parent, see *Archer*, 813 P.2d at 1061, the real beneficiaries are the children. See *Grimes*, 159 Vt. at 404, 621 A.2d at 213. There is no evidence to suggest they would not benefit from the order issued here.

Thus, we reject defendant's argument that, based on the evidence, the court was required to issue an order in an amount no higher than that reflecting the highest income covered by the guidelines. As specified in 15 V.S.A. § 656(d), the family court had discretion to consider an award above the maximum guideline amount based on the factors in 15 V.S.A. § 659(a). See *C.D.*, 160 Vt. at 500, 631 A.2d at 851.

## B

Next, defendant argues that the family court erred by calculating support based on an extrapolation from the highest income reflected in the guidelines. Although the actual calculation was different from defendant's characterization, as discussed below, we agree in part with defendant's argument and remand for a redetermination of the support obligation.

The guidelines establish "the percent of combined available income which parents living in the same household in Vermont ordinarily spend on their children." 15 V.S.A. § 654. They are stated as dollars per month and are broken down by combined available income, in increments of $50 per month, and number of children. See *Guidelines* § 1002. Reflecting the spending pattern of intact families, the percentage of income spent on children decreases as income rises. At the low end income of $575 per month, parents have been found to spend 38.2% of their income on support of two children. At the high end income of $11,575 per month, the percentage is 19.0.

When first created, the guidelines determined the support obligation based on gross income. See *Ainsworth*, 154 Vt. at 107, 574 A.2d at 775. In 1990, the Legislature amended the applicable statutes to base the guidelines on available income, which is defined as gross income, less the amount of certain deductions, including FICA taxes and state and federal income taxes. See 1989, No. 220 (Adj. Sess.), § 16; 15 V.S.A. § 653(1).

Defendant argues that the statutory scheme should be read to prohibit extrapolation from the guidelines to set support amounts for incomes above the maximum provided for in the guideline tables. By

extrapolation, we mean "[t]he process of estimating an unknown number outside the range of known numbers." Black's Law Dictionary 528 (5th ed. 1979). In this case, the "process" with which defendant takes issue is to calculate the presumptive support level using the percentage of income at the high end of the guidelines — that is, 19% for two children.

Defendant relies on decisions from other courts that have held that extrapolation from the guidelines is prohibited under the applicable statutory scheme. See, e.g., *In re Marriage of Van Inwegen*, 757 P.2d 1118, 1120 (Colo. Ct. App. 1988); *Battersby v. Battersby*, 590 A.2d 427, 430 (Conn. 1991); *Preis v. Preis*, 631 So. 2d 1349, 1356 (La. Ct. App. 1994); *Mehra v. Mehra*, 819 S.W.2d 351, 354 (Mo. 1991).[2] Other courts have given trial courts more discretion in computing support obligations for high-income parents without prohibiting any particular methodology. See *Galbis*, 626 A.2d at 31-32 (statute does not prohibit use of guideline percentage of income for parents with incomes above guideline maxima); *White v. Allen*, 667 A.2d 112, 115 (Me. 1995) (court has discretion "[a]bsent a violation of a positive rule of law"); *Voishan v. Palma*, 609 A.2d 319, 324 (Md. 1992); *In re Marriage of Wackler*, 850 P.2d 963, 966 (Mont. 1993) (court has "broad discretion" in fashioning support order for income above the guidelines); *Archer*, 813 P.2d at 1061 (support obligation for parents with income above the guidelines within the discretion of the court considering "the overall scheme of the Guidelines"); *Nash*, 846 S.W.2d at 806 (court had discretion to award support at guideline maximum percentage without a showing of need for more support than guideline maximum). We are not persuaded by those decisions that prohibit extrapolation based on the percentage of income for child support at the guideline maximum. We see nothing in our statutory scheme that prohibits this approach in the proper case.

We are most persuaded by the decisions from the District of Columbia and Maryland courts. In *Galbis v. Nadal*, the District of Columbia Court of Appeals upheld a support order that was based on extrapolation from the guidelines to determine the percentage of income to be ordered as support from a high-income parent. The

---

[2] A number of cases cited by defendant involve statutes that are dissimilar to our statute, and, as a result, we do not find the decisions helpful. See *Cassano v. Cassano*, 651 N.E.2d 878 (N.Y. 1995); *Stringer v. Brandt*, 877 P.2d 100 (Ore. Ct. App. 1994). For example, the New York statute specifically authorizes the court to use either a list of factors or the "child support percentage" when the parental income is above the guideline maximum. See *Cassano*, 651 N.E.2d at 881.

court reasoned that the statutory scheme gave no presumptive effect of the guidelines for upper-income parents, but did not prohibit extrapolation from them. *Galbis*, 626 A.2d at 32. It held: "[the statute] allows the trial court greater discretion in determining an appropriate award amount when the noncustodial parent is relatively wealthy; it does not exempt that parent from the general principle that underlies the guidelines as a whole: that support payments shall be commensurate with parental income." *Id.*

The Maryland Court of Appeals reasoned similarly in *Voishan v. Palma*, giving discretion to the trial court to use the guidelines as a "guide" but also to exercise independent judgment in assessing the children's need and the parental ability to pay. *Voishan*, 609 A.2d at 324-25. It noted that the income percentage at the top of the guidelines might be too high or too low in any individual case. *Id.* at 324. It concluded that the statute gave the trial court discretion in determining support levels for parents with incomes above the guidelines, but "the principles from which the schedule was derived should [not] be ignored when a judge exercises discretion." *Id.* at 326.

In *Ainsworth*, we held that when a court deviates from the guidelines pursuant to 15 V.S.A. § 659(a), because application of the guidelines would be unfair to a party or to the child, "the trial court's findings and conclusions must show it considered the factors specified in § 659(a) as well as other relevant factors and must show the reasons for the deviation from the guidelines and the amount of support ordered." *Ainsworth*, 154 Vt. at 114, 574 A.2d at 779. These requirements apply when a court is determining the level of support pursuant to § 656(d) for a noncustodial parent with income above the guidelines. See *C.D.*, 160 Vt. at 500, 631 A.2d at 851. As long as the court considers the statutory factors, makes adequate findings and explains its reasoning in determining the support obligation, its discretion is not limited to adopt or avoid a particular methodology. The only additional requirement is that its decision must reflect the principles behind the guidelines.

The family court's decision, establishing the support obligation for 1993 and 1994, is brief:

> Logic and equity dictate that the court calculate such support by extrapolating from the Guidelines' framework to reach the parties' combined income. The court agrees with Plaintiff's calculations for 1993 and 1994. The court, therefore, GRANTS Plaintiff $20,973.44 in arrearages for the

years 1993 and $9,180.00 for the period preceding the hearing, i.e., 32 weeks.

Although we do not agree with defendant's argument that we should reject the decision because it involved extrapolation from the guidelines, we cannot conclude that the brief analysis complies with the *Ainsworth* requirements. There is no indication that the court considered the factors in § 659(a), and there is no explanation why it adopted the plaintiff's calculations.

We are also concerned that the plaintiff's calculations are not consistent with the methodology both plaintiff and defendant allege was used. Plaintiff began with a child support calculation for a former year when the parties' combined available monthly income was $8,232.98, well below the guideline maximum income. To the extent plaintiff extrapolated, it was from the percentage of income attributable to support of two children at that income level. That percentage is 23.4%, not the 19% applicable at the highest income covered by the guidelines.

Further, the extrapolation was done from monthly gross income, and not from monthly available income. In the former year when the parties had $8,232.98 in available income, defendant had $10,024 in gross income and was required to pay $1,450.34 in child support, or 14.5% of his gross income. In making the proposal which the court adopted, plaintiff calculated defendant's support obligation by taking defendant's gross monthly income for the former year, subtracting his maintenance payments, and multiplying the adjusted income by 14.5%. Using gross income, rather than monthly available income, introduced a distortion because the percentage of income attributable to FICA and income taxes is not a constant.

██ Because the calculation of the defendant's support obligation for 1993 and 1994 is not consistent with the apparent rationale, and there is no indication the family court considered the factors specified in § 659(a), or statement of reasons for its decision, we reverse the child support calculations and remand for further proceedings.

## C

Next, defendant argues that the court erred by failing to calculate his support obligation based on shared custody. By statute, in cases where the noncustodial parent exercises physical custody of a child at least 25% of a calendar year, or physical custody is shared equally, adjustments are made in the child support calculation to reflect the

need to maintain two households which are adequate for child rearing. 15 V.S.A. § 657(a) & (b). These adjustments usually mean that the noncustodial parent will pay less child support than if there were no adjustments.

The parties' 1991 divorce order states that support calculations "shall not be based on shared custody guidelines." Defendant claims that by awarding child support beyond the highest level in the guidelines, the court reached a new support order and therefore his waiver of shared custody guidelines in the 1991 order no longer applied. As stated in the opening of this opinion, we conclude that the family court did not modify the order. Thus, the premise of defendant's argument does not apply.

■ The family court also treated defendant's request for calculation based on shared custody as a motion to modify and denied it because there had been no change in the amount of time spent in defendant's custody. Child support orders may be modified "upon a showing of a real, substantial and unanticipated change of circumstances." 15 V.S.A. § 660(a). Presence of a change of circumstances is a jurisdictional prerequisite to consideration of a motion to modify. See *McCormick v. McCormick*, 150 Vt. 431, 436, 553 A.2d 1098, 1101-02 (1988). The court has broad discretion to determine whether it will modify a support order. See *Isham v. Isham*, 152 Vt. 637, 640, 568 A.2d 421, 423 (1989). Because there has been no real change in the physical custody situation since the 1991 order, we agree that the family court acted within its discretion in refusing to grant the motion to modify.

We note that defendant bases much of his request to modify on the unfairness of requiring him to pay private school tuition for the children, without receiving any credit for this payment in his support order. Again, the sharing of educational costs of the children was specifically covered in the 1991 order, based on the agreement of the parties, and there is no provision for either party to subtract education costs from child support payments. Nevertheless, the "educational needs of the child" is a specific factor in § 659(a) as bearing on the discretion of the court in setting a support amount. On remand, defendant is free to argue that because the educational needs of the children are met by the direct payments of the parties, his support obligation should be less than it would otherwise be. Cf. *McCormick v. McCormick*, 159 Vt. 472, 478, 621 A.2d 238, 241 (1993) (as a matter of "fundamental fairness" income imputed to noncusto-

dial parent to determine level of child support should not include that devoted to children's tuition payments for private school).

Finally, we address the court's award of attorney's fees to plaintiff. Defendant argues that because the child support order should be reversed, the attorney's fees award should also be reversed. We disagree. The primary consideration in an award of attorney's fees is the ability of the supporting party to pay and the financial needs of the party receiving the award. *Dunning v. Meaney*, 161 Vt. 287, 291, 640 A.2d 3, 6 (1993). In its decision, the family court stated that it awarded attorney's fees "based upon the parties' financial resources." Although we have reversed the calculation of defendant's support obligation, plaintiff's enforcement action was necessitated by defendant's position, and plaintiff was required to respond to defendant's motion to modify the maintenance and support orders. We conclude that the award was within the discretion of the family court and should stand despite our remand of the support order.

*The Windham Family Court's order denying defendant's motion to modify the divorce order between the parties, and its order awarding attorney's fees to plaintiff, are affirmed. The order granting plaintiff's motion to enforce and calculating the amount of support owed by defendant for 1993 and 1994 is reversed and remanded for proceedings consistent with this opinion.*