## Roxanne Tetreault v. Raymond Coon

[708 A.2d 571]

No. 96-415

Present: **Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 23, 1998

*Geoffry F. Walsh,* Vermont Legal Aid, Inc., Springfield, for Plaintiff-Appellant.

*Daphne Moritz,* Office of Child Support, Springfield, for Defendant-Appellee Office of Child Support.

**Dooley, J.** Plaintiff Roxanne Tetreault appeals from a child support order against the father and noncustodial parent, Raymond Coon, arguing that it is inadequate to meet the needs of the four minor children of the parties. The case raises important questions about the support obligations of the noncustodial parent when the custodial parent has children from a subsequent relationship that impair that parent's ability to earn income to support any of the children. The family court held that the presence of subsequent children authorized it to deviate from the child-support guidelines and reduce the child-support obligation of defendant father. We disagree and reverse.

## I.

The parties never married, but have four minor children from their relationship. After separating in February of 1989, mother gained sole legal and physical responsibility for the four children. An October 1991 interim parentage order required father to pay $646 per month in child support and to provide health insurance coverage for the children. During this period, mother had a relationship with another man, and twin boys were born of this relationship. She separated from the father of the twins and received $43 weekly in child support from him. On September 10, 1992, the Office of Child Support filed a petition to issue a final child-support order against father, increasing the amount of support for mother consistent with the guidelines. In response to the motion, father requested that the magistrate deviate from the child-support guidelines pursuant to 15 V.S.A. § 659(a) and set a support amount lower than the guidelines would require. Father also asserted that mother was "voluntarily unemployed" and income should be imputed to her pursuant to 15 V.S.A. § 653(5)(A)(iii).

After several hearings on the motion, the family court magistrate issued a decision on February 1, 1994. The magistrate found:

Ms. Tetreault has a minimal work background. She was in the Air Force where she received training in propeller repair, but never did any civilian work in that field. Her only

other work experience was assisting her mother in a restaurant doing waitressing and serving food. This ended five or six years ago. She has had no other paid employment since then. She currently does not work because she needs to care for the twins who are two years old. She does not have any backup day care in place for her children if they should be sick. All of her children with Mr. Coon, however, are now school age and are enrolled full time in public school.

At the time of the hearing, mother received ANFC welfare benefits.

Father worked full time as an equipment specialist for a major manufacturer. At the time of the hearing, he earned $3,341 per month as a salaried employee. He was attending college to earn a B.A. in Business Management and expected to graduate in April 1994.

Despite her findings on mother's employment history, the magistrate decided to impute income to mother. Noting that the Legislature specifically provided that an existing support order could not be reduced because of the obligor's additional dependents, 15 V.S.A. § 656a(c), she reasoned that equity required that a support obligation not be increased because of a custodial parent's additional dependents. She held that allowing mother not to work in order to take care of the young twins would, in effect, be increasing father's support obligation because of her additional dependents. Thus, the magistrate held that mother was voluntarily unemployed to the extent of any work she could perform consistent with caring for the children of the parties, and imputed such income as mother could earn under these circumstances. See 15 V.S.A. § 653(5)(A)(iii). She decided that mother could work thirty hours per week while the children of the parties were in school and imputed income to her at the rate of $5 per hour. The imputed income reduced the amount of child support the children would receive under the guidelines from $1,248.20 per month to $1,156.99 per month.[1]

Mother appealed the magistrate's order to the family court. In its November 22, 1994 order, the family court determined that the magistrate's findings did not support the conclusions with respect to the imputation of income:

[T]here was no finding by the court that there were job openings available in plaintiff's community at the stated

---

[1] The guidelines calculation is based on the guidelines in effect as of July 1992. The calculation is based on splitting the tax exemptions for the children between the parents.

hourly wage range. There were no findings that plaintiff possessed the skill, experience or training levels needed for available job openings. No findings were made related to the cost of day care or its availability for the non-school age children in plaintiff's household. There was no indication plaintiff's day care costs would not exceed her income. The day care costs for the four older children, ages 8-13 years, for summer and other school vacation periods was not considered. In the absence of any of the above findings, it was error for the magistrate to conclude that plaintiff could find employment.

Thus, the court refused to impute income to mother under § 653(5)(A)(iii).

Nevertheless, the court affirmed the magistrate's decision under a different rationale. The court held that application of the guidelines would be inequitable to father, reasoning that mother's desire to remain at home caring for her two youngest children reduced her ability to contribute financially and placed an unfair burden on father. Relying upon 15 V.S.A. § 659(a), the court deviated from the guidelines and determined father's support obligation based on the actual expenses of the four children, which it found to be $1,100, a figure similar enough to the $1,156.99 per month ordered by the magistrate to leave the magistrate's decision undisturbed.

Plaintiff argues on appeal that neither rationale is consistent with the child support statute and requests that we order that the child-support order be increased to that calculated under the guidelines, solely relying on defendant's income. The Office of Child Support appears here as appellee and urges us to affirm on either the rationale adopted by the magistrate or that of the family court.[2] We agree with plaintiff that neither rationale supports the order.

## II.

We start with the decision of the magistrate because that decision best raises the underlying issues. Review of the decision of the magistrate is normally based on the record made before the magistrate. See 4 V.S.A. § 465; V.R.F.P. 8(g)(4). Findings of fact shall not be set aside unless clearly erroneous. See V.R.C.P. 52(a)(2); V.R.F.P. 4 (Rules of Civil Procedure apply in divorce proceedings); V.R.F.P. 8(b)

---

[2] Defendant has not appeared in this appeal.

(Family Proceedings Rule 4 applies to magistrate proceedings). The decision will be affirmed if the conclusions of law are supported by the findings. See *Abbiati v. Buttura & Sons, Inc.*, 161 Vt. 314, 318, 639 A.2d 988, 990 (1994).

Under Vermont's guidelines statute, the total child support obligation is divided between the parents in proportion to their respective incomes. See 15 V.S.A. § 656(a). Therefore, the first step in calculating a child-support order under the guidelines is to determine the gross income of each parent. See *id.* § 653(5). "Gross income" is defined broadly and includes income from any source. *Id.* § 653(5)(A)(i). The statute provides in part:

> (A) Gross income shall include:
>
> . . . .
> (iii) the potential income of a parent who is voluntarily unemployed or underemployed unless
>
> . . . .
> (c) the unemployment or underemployment of the parent is in the best interest of the child . . . .

*Id.* § 653(5)(A)(iii).

The statute does not define voluntary unemployment or underemployment. Nor does it directly address the situation where a child-support obligee remains at home to care for young children, except to the extent that such a parent can be said to be voluntarily unemployed or underemployed. Recognizing this, the magistrate looked elsewhere in the statutory scheme for a relevant policy. Because the children for whom mother remained at home were born after the children of the parties, the magistrate looked to the policy on subsequent dependents.

In *Ainsworth v. Ainsworth*, 154 Vt. 103, 113, 574 A.2d 772, 778 (1990), we held that the family court could find a support order based on the guidelines to be inequitable in cases where the obligor had a duty to support other dependent children. Following that decision, the Legislature amended the statute to specifically allow an adjustment for additional dependents not covered by the support order, calculated as follows:

> The adjustments shall be made by calculating an amount under the guidelines to represent the support obligation for additional dependents based only upon the responsible parent's available income, without any other adjustments.

This amount shall be subtracted from that parent's available income prior to calculating the total child support obligation based on both parents' available income as provided in section 655 of this title.

15 V.S.A. § 656a(b). The adjustment is not available "to the extent that it contributes to the calculation of a support order lower than a previously existing support order for the children who are the subject of the modification hearing at which the adjustment is sought." *Id.* § 656a(c).

Relying on the modification provision, the magistrate decided that it should apply when the obligee has additional dependents and seeks to raise the support order because of them. From this conclusion, the magistrate reasoned that proper action consistent with the policy was to treat the additional dependents as if they did not exist.[3]

The magistrate found more in the statutory scheme than we can. If anything, the policy of the statute is to recognize the effect of additional dependents, not to ignore them. The magistrate passed over the main policy of the statute and focused on a hold-harmless provision. By its terms, the provision applies only to modification motions and only to the consideration of the additional dependents of the obligor. In contrast, this proceeding involves the initial setting of a child-support amount under the guidelines and consideration of additional dependents of the obligee.

Thus, we draw a conclusion from the statutory scheme opposite to that drawn by the magistrate. The Legislature's intent is that the economic effects of additional dependents should be considered in establishing child-support awards. This policy suggests that we must consider the impact of plaintiff's additional children, rather than ignore them.

In the absence of more specific direction from the Legislature, we have looked to how other jurisdictions have applied statutory require-

---

[3] Because of the magistrate's rationale, she did not reach the question of whether the unemployment of plaintiff, although voluntary, could be considered to be in the "best interest" of the twins so that imputation was not appropriate under 15 V.S.A. § 653(5)(A)(iii)(c). That question would require the magistrate to resolve whether the term "the child" in the subsection includes a child who was not born of the parties to the support order. We also do not reach that question because we resolve this case on the meaning of the terms "voluntarily unemployed or underemployed."

The magistrate also did not make the additional dependents adjustment calculation under § 656a(b), which appellee acknowledges was error. Applying the instructions accompanying the guidelines, the adjustment would reduce plaintiff's monthly available income by $257 and increase defendant's support obligation to $1169 per month.

ments to impute income in cases of voluntary unemployment to parents who stay in the home to raise children. Not surprisingly, there is a split of authority on the issue. Some courts have held that stay-at-home parents are voluntarily unemployed, while others have ruled that they are not. Compare *Thomas v. Thomas*, 589 A.2d 1372, 1373 (N.J. Super. Ct. 1991) (mother who stayed at home to care for young children from subsequent relationship was not "voluntarily unemployed") with *Canning v. Juskalian*, 597 N.E.2d 1074, 1076-79 (Mass. App. Ct. 1992) (mother who stayed home to care for child was "voluntarily unemployed").

The different positions reflect the weight given to the conflicting considerations. On the one hand, imputing income to a stay-at-home parent creates an economic disincentive to remarriage and child conception, punishes children for the action of their custodial parent, does not support the nurturing of young children and requires consideration of income that is often fictional. See *Canning*, 597 N.E.2d at 1077 n.9. On the other hand, the policy discourages parental unemployment or underemployment, recognizes the volitional aspect of conceiving subsequent children, and does not require the obligor to pay more because of the presence of a second family the obligor is not required to support. See *id.*

We believe that the conflicting considerations can be accommodated by a policy that allows income imputation in appropriate cases, but not in all cases. Among the factors for the family court to consider in deciding whether to impute income are:

> (1) the age, maturity, health, and number of children in the home; (2) the custodial parent's employment history, including recency of employment and earnings, as well as the availability of suitable employment; (3) the age and health of the custodial parent; (4) the availability of appropriate child-care givers; (5) the relationship between the expense of child-care givers and the net income the custodial parent would receive; (6) the cost, if any, for transportation, suitable clothing, and other items required for the custodial parent to have the imputed employment; (7) the custodial parent's motivation or reasons for being at home; and (8) the adequacy of available resources if the custodial parent remains at home.

*Stanton v. Abbey*, 874 S.W.2d 493, 499 (Mo. Ct. App. 1994). The family court must have discretion in evaluating the relevant factors. Cf. *Smith v. Stewart*, 165 Vt. 364, 370, 684 A.2d 265, 269 (1996) (family

court has discretion in determining child-support award outside the guidelines). The factors go to whether the parent's unemployment or underemployment can be considered to be voluntary.[4] For this reason, they apply whether the stay-at-home parent is rearing children of the parties to the support order, or additional children of a parent other than the child-support obligor. See *Atkinson v. Atkinson*, 616 A.2d 22, 23 (Pa. Super. Ct. 1992).

■ Implied in these factors is a policy on treatment of expenses in producing imputed income. In *McCormick v. McCormick*, 159 Vt. 472, 477, 621 A.2d 238, 240 (1993), we held that in determining child support the family court could impute income to a father equal to his expenditures where the court was unable to get a true picture of his income and assets. We also held, however, that "fundamental fairness" required that the father be able to offset against the imputed income amounts the father paid for tuition to enable the children to attend private schools. *Id.* at 478, 621 A.2d at 241. Similarly, fundamental fairness requires that any income imputed to a stay-at-home parent must reflect the expenses that would produce that income. Otherwise, the imputed income is fictional, because it could never actually be produced, and the actual support available to the children is reduced.

In adopting this policy, we join the many courts that have required consideration of the cost of child care in calculating imputed income.[5] See, e.g., *Vlahos v. Ware*, 690 So. 2d 407, 410 (Ala. Civ. App. 1997) (child-care costs, incurred on behalf of children because of parent's employment or job search, must be added to calculation of child support); *Simpson v. Simpson*, 650 N.E.2d 333, 337 (Ind. Ct. App. 1995) (work-related child-care expenses must be deducted from available income); *Harrison v. Harrison*, 871 S.W.2d 644, 646-47 (Mo. Ct. App. 1994) (reasonable work-related child-care expenses must be included when calculating child-support order); see also P. Nickerson, *The Washington State Child Support Schedule: Judicial Discretion*

---

[4] As stated in footnote 3, we do not reach whether the unemployment or underemployment is in the best interest of the child as that term is used in § 653(5)(A)(iii)(c).

[5] We recognize that the method of treating child-care costs may vary. At least for children of the parties, the statute requires that these costs be shared by the custodial and noncustodial parents in relation to their incomes. See 15 V.S.A. §§ 653(9) (child-care costs are added to guideline support amounts to determine total support obligation), 656(a) (total support obligation is divided between parents in relation to their respective available incomes). For other children of the custodial parent, it may be more appropriate to subtract child-care costs from gross income in determining how much income to impute to the custodial parent.

*and Deviations from the Standard Calculation*, 26 Gonz. L. Rev. 71, 78-80 (1990/91) (child-care expenses should be included in support calculation because child care is necessary substitute for parent's care and, depending upon number of children, can be considerable expense). As the Montana Supreme Court noted in *In re Marriage of Noel*, 875 P.2d 358, 360 (Mont. 1994), by failing to consider child-care costs in imputing income, the amount imputed "does not realistically reflect the mother's income earning ability."

■ Finally, if child-care costs exceed the parent's earning capacity, the parent cannot be considered voluntarily unemployed, and income should not be imputed. See *Shaddox v. Schoenberger*, 869 P.2d 249, 253 (Kan. Ct. App. 1994). In *Shaddox*, the court held that income could not be imputed to a mother who had significant child-care responsibilities and limited job skills. See *id.* The court relied on a report from the Kansas Commission on Child Support, which concluded that it was inequitable to impute income when the costs of child care and transportation approximate the custodial parent's earning ability. See *id.* (citing Report of Kansas Commission on Child Support, 10 (1987)).

■ The family court's analysis of mother's situation was consistent with the above policy on income imputation. Mother has custody of six children, two of whom are very young and not in school. She has a limited employment history and has not recently been employed. Even if she can earn minimum wage, as the magistrate found, the expenses to produce that income are likely to be high, assuming child care is available at all. Thus, we affirm the family court's decision not to require income imputation in this case. The court acted within its discretion to require consideration of the actual availability of employment and the expenses involved in producing income.

### III.

Because we agree with mother that the magistrate's decision cannot be affirmed, we must consider the alternative rationale of the family court. After deciding that mother was not voluntarily unemployed, the court held that:

> calculating a support award based on the guidelines would be inequitable. Plaintiff's need and desire to remain at home caring for her two youngest children, though commendable, does reduce her ability to contribute finances to the family, and places an unfair burden on defendant. These circumstances allow the court to vary from the guidelines.

Mother contends that the family court had no power to deviate from the guidelines in this circumstance and urges us to reverse its decision.

The family court is required to order the parents owing a duty of support to a child to pay an amount of support in accordance with the guidelines unless otherwise determined under 15 V.S.A. § 659(a). See 15 V.S.A. § 658(a). Section 659(a) creates a rebuttable presumption that the amount reflected in the child-support guidelines is the amount of support needed by the children. To rebut this presumption and deviate from the guideline amount when calculating an order of support, the court must determine that application of the guidelines would be unfair to the child or any of the parties. See *id.*; *McCormick*, 159 Vt. at 478, 621 A.2d at 241; *Grimes v. Grimes*, 159 Vt. 399, 406, 621 A.2d 211, 214 (1992). To make a finding that application of the guidelines would be "unfair" the court must consider all of the relevant factors, including the nine factors specified in the statute. See 15 V.S.A. § 659(a).

The escape valve of § 659(a) must be applied in light of the purposes behind the guidelines statute. As we explained in *Ainsworth*, 154 Vt. at 106, 574 A.2d at 774-75, there are three purposes: (1) to insure that child-support orders "reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the marriage not been dissolved," 15 V.S.A. § 650; (2) to standardize child-support orders to ensure more equitable treatment of parties in similarly situated cases by narrowing or eliminating judicial discretion; and (3) to increase the efficiency of child-support adjudication and increase the number of settlements due to the predictability of the award amounts.

As we held in *Ainsworth*, these purposes necessarily constrain the use of guideline deviation under § 659(a) and narrow the discretion that the section provides to the family court. Allowing the family court to consider every variation with respect to the needs of the children, the living situation or the expenses of the parents would undermine the Legislature's intent in standardizing support awards. See *Ainsworth*, 154 Vt. at 109, 574 A.2d at 776. We further warned that if courts were allowed to routinely deviate from the guideline amounts, then "the 'escape valve' of § 659 would eat up the rule and destroy the predictability of amounts and the maintenance of the standard of living of the children that are the desired results of a guideline system." *Id.*

■ We cannot, consistent with the limited purpose of § 659(a), allow a deviation from the guidelines in this case based on the family court's rationale.[6] In the sense used by the family court, allowing a custodial parent to stay at home to care for children would always place an "unfair burden" on the obligor parent. Thus, the exception created by § 659 has eliminated the policy that allows custodial parents to remain in the home in certain circumstances.

Moreover, this is a case where the record does not support that the implied income will ever be realized. The family court did not shift the cost of meeting the children's needs between parents. Instead, it reduced the income available to the children. While the result may appear to balance fairness between the father and mother, it actually penalizes the children of the marriage because the mother had additional children.

We are also concerned about the court's rationale for setting the child-support amount it did. The court chose the support amount of $1,156.99 because it roughly represented the amount that plaintiff had been spending on the children. Plaintiff's spending, however, was based on her income from welfare benefits. As we noted recently in *Smith v. Stewart*, 165 Vt. at 369, 684 A.2d at 269, it is unreasonable to expect a custodial parent to spend more money on the children in anticipation of a court order requiring the noncustodial parent to increase the amount of child support. It is impossible for a welfare recipient to increase the expenditures on the children. We suggested in *Smith* that the family court might ask the custodial parent to itemize how additional income might be spent on the children. See *id.* In any event, we caution on using historic spending patterns based on reduced income to determine the financial needs of children.

If we were to affirm the family court decision, father's reduction in child support would be at the direct expense of his children and would lead to the same inequities as the magistrate's decision. This result would be contrary to the statutory purpose of providing children with the standard of living they would have enjoyed had the marriage remained intact. See 15 V.S.A. § 650. For these reasons, we hold that

---

[6] We do not suggest that the court may never deviate from the guidelines in cases where either parent has additional dependents. For example, economies of scale may reduce per-child need as the size of the family is increased. Thus, the economic needs of the four children of the parties in this case may be reduced because they are in a household with two other children, assuming, of course, that the needs of the additional children are also being met. We have no evidence to determine whether economies of scale apply in this case.

this case does not fall within the narrow scope of exceptions warranting a deviation from the child-support guidelines under § 659. On remand, the family court should establish a child support order pursuant to the guidelines or allow additional evidence and make findings that would allow imputation of income or deviation from the guidelines consistent with the principles in this opinion.

*The family court order setting child support at $1,156.99 is reversed and the cause is remanded for calculation of a support order consistent with this opinion.*