## Beverly Grimes v. Keith Grimes

[621 A.2d 211]

No. 92-016

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 6, 1992

Motion for Reargument Denied December 7, 1992

400

*P. Scott McGee* of *Hershenson, Carter, Scott, McGee & Gray*, Norwich, for Plaintiff-Appellant.

*Tavian Mayer* and *Christopher C. Cassidy*, Law Clerk (On the Brief), South Royalton, for Defendant-Appellee.

**Dooley, J.** Plaintiff Beverly Grimes appeals from the Windsor Family Court decision granting the motion of defendant Keith Grimes to modify child support payments. She also claims the court erred in striking a provision from a stipulation between the parties, incorporated into a 1987 court order, that waived the application of 15 V.S.A. § 660(b) with respect to future modifications of child support. We affirm.

Plaintiff and defendant were divorced on June 3, 1985. Defendant was ordered to pay child support for the two minor children in the amount of $225 per week, to be increased annually by 5% to reflect increases in the cost of living. Payment disputes arose, leading to a contempt motion by plaintiff and a request to reduce the child support amount by defendant. On November 11, 1987, in settlement of the disputes, the parties entered into a stipulation with the following terms: (1) defendant acknowledged that under the previous order, with its cost-of-living-increase provision, he owed $260 per week in child support; (2) the parties agreed to recharacterize the obligation as $175 per

week in child support and $75 per week in maintenance; (3) both of these amounts would be increased by 5% annually; (4) the accrued arrearage would be paid according to a specified schedule; and (5) both parties waived and released any future right to modification of the child support and maintenance award under 15 V.S.A. § 660(b).

The statute, 15 V.S.A. § 660(b), had become effective on April 1, 1987, and provided that any child support amount which deviated by more than 15% from the amount calculated under the applicable child support guidelines "shall be considered a real, substantial and unanticipated change of circumstances."[1] The presence of a real, substantial and unanticipated change of circumstances is grounds for modification of a child support order. 15 V.S.A. § 660(a). On December 11, 1987, the Windsor Superior Court entered a judgment order, incorporating the terms of the stipulation. Based on the incomes of the parties, the child support amount defendant agreed to pay was more than 10% in excess of that calculated under the applicable child support guideline.[2]

Payment disputes arose again, and in November of 1990 plaintiff again moved for contempt, alleging that defendant was more than $3000 in arrears and had unilaterally lowered his payments to $150 per week. In February 1991, defendant again responded with a motion to modify, alleging that reductions in his income constituted sufficiently changed circumstances to justify the reduction. These motions were heard on October 1, 1991. On November 15, 1991, the Windsor Family Court issued an order reducing the child support award to $155 per week and the maintenance award to $45 per week, both amendments retroactive to February 1991. The court also established an arrearage amount, set a schedule for its payment, ordered that any further modifications would be based on the child support guidelines, and established a civil penalty for tardy payment.

---

[1] The statute was amended by 1989, No. 220 (Adj. Sess.), § 23 to lower the percentage deviation warranting modification from 15% to 10%. The amendment was effective on October 1, 1990. Because the deviation in this case exceeds 15%, the amendment had no effect on the outcome.

[2] The family court calculated that defendant would have been obligated to pay child support of $152 per week in 1987 under the guidelines.

The court also struck from the order the provision prohibiting modification based on 15 V.S.A. § 660(b). It relied, however, on the reduction in defendant's income and the increase in plaintiff's income as grounds for modification, not the deviation from the guidelines recognized by § 660(b).

On appeal, plaintiff raises four issues: (1) the changes in the incomes of the parties did not amount to a real, substantial and unanticipated change in circumstances warranting modification of the child support amount; (2) the agreement that 15 V.S.A. § 660(b) cannot be used as grounds for modification is valid and should not have been struck; (3) the decision to modify the 1987 order was an abuse of discretion, particularly because the re-characterization of part of the payment as maintenance was continued; and (4) the court erred in failing to award plaintiff all of her legal fees.

We begin with the second issue because we find it to be determinative of the first. That is, if 15 V.S.A. § 660(b) applies to this proceeding, it is undisputed that it would provide the change of circumstances needed for modification of the award. Thus, if the section applies, we do not have to decide whether the findings with respect to the incomes of the parties were sufficient to allow the court to conclude that changed circumstances were present.[3]

The child support guidelines were adopted to ensure adequate child support orders, eliminate discrepancies in awards between children in similar circumstances and increase the efficiency of child support adjudication. See *Ainsworth v. Ainsworth*, 154 Vt. 103, 106, 574 A.2d 772, 774–75 (1990). They are embodied in tables, promulgated by the Secretary of Human Services, reflecting the percentage of the combined parental income that should be spent on the children and an allocation

---

[3] The Windsor Family Court found that the reduction in defendant's income, and the increase in plaintiff's income, represented a real, substantial and unanticipated change of circumstances warranting modification pursuant to 15 V.S.A. § 660(a). Because of this finding, it concluded that defendant's challenge to the stipulation provision prohibiting modification based on § 660(b) was moot. It went on, however, to find the provision invalid and strike it from the order so it would not affect future modification motions. We believe that this circuitous route to modification is unnecessary. If the provision is invalid, defendant can base this modification motion on § 660(b).

between the parents for the payment of that amount. 15 V.S.A. §§ 654, 656. Consistent with the purposes of the guidelines, the Legislature has required the court to review any parental agreement on child support for adequacy in relation to the guidelines. 15 V.S.A. § 655. As noted above, the Legislature has authorized modification of child support orders where there is a "real, substantial and unanticipated change of circumstances," including where the child support amount varies more than 10% from that calculated under the guidelines. 15 V.S.A. §§ 660(a), (b). The power to modify an order exists "whether or not the order is based upon a stipulation or agreement." 15 V.S.A. § 660(a). The statutes do not specify, however, whether a parental waiver of the right to seek modification pursuant to the statutory standards is effective.

■ Because the children are the real beneficiaries of child support, the court must protect their interest. Therefore, we have consistently recognized the authority of the court to override the terms of child support agreements. See *Frink v. Frink*, 128 Vt. 531, 534, 266 A.2d 820, 822 (1970) (divorce stipulation); *Padova v. Padova*, 123 Vt. 125, 129, 183 A.2d 227, 230 (1962) (antenuptial agreement). We have also recognized that the court's power over child support orders continues through the minority of the children because

> the court embodies the public's paramount interest in the care and maintenance of these children, its jurisdiction is of necessity continuing until they reach the age of majority, and its decree, in so far as it touches the children's welfare, is subject to modification.

*White v. White*, 141 Vt. 499, 503, 450 A.2d 1108, 1110 (1982). The parties cannot withdraw this jurisdiction by agreement. *Id.*; see also *Bradley v. Bradley*, 154 Vt. 304, 305, 575 A.2d 190, 191 (1990) (law permits modification of child support regardless of motivation of parties in setting original amount). Finally, we have been unwilling to find a parent's inaction to be a waiver of a child's support rights. *Lyon v. Lyon*, 143 Vt. 458, 462, 466 A.2d 1186, 1189 (1983).

Although we have not directly addressed the enforceability of parental agreements prohibiting or limiting the power of the court to modify child support in the future, other courts have

found such agreements invalid. See, e.g., *Lang v. Lang*, 252 So. 2d 809, 812 (Fla. Dist. Ct. App. 1971); *In re Support of Burks*, 100 Ill. App. 3d 700, 703, 427 N.E.2d 353, 356 (1981); *Phillips v. Phillips*, 163 Kan. 710, 712, 186 P.2d 102, 103 (1947); *Leonard v. Lane*, 821 S.W.2d 275, 278 (Tex. Ct. App. 1991); *In re Marriage of Studebaker*, 36 Wash. App. 815, 817, 677 P.2d 789, 791 (1984). The closest precedent is *In re Marriage of Miller*, 790 P.2d 890, 892–93 (Colo. App. 1990), decided in the state with the child support guidelines most similar to ours. See *Ainsworth v. Ainsworth*, 154 Vt. at 111, 574 A.2d at 777 (Colorado guideline system closest to that adopted in Vermont). In refusing to enforce an agreement in which the father was awarded child custody on condition that he never seek child support from the mother, the court reasoned that "[s]tatutory provisions may not be modified by agreement of the parties if doing so would violate a public policy expressed in the statute or would affect the rights of the child which the statute was designed to protect." *Marriage of Miller*, 790 P.2d at 892. It held that the child support guidelines were mandatory, and the agreement could not "preclude or limit the court's authority concerning child support." *Id.* at 892–93.

The cases from other states are consistent with our precedents and child support statutes. Although the agreement between the parents represented consideration of their interests, it could not conclude the interests of the children. See *White v. White*, 141 Vt. at 503, 450 A.2d at 1110. Nor could it take away the court's continuing jurisdiction over child support. *Id.* The guideline system is intended to promote uniform awards that fairly reflect the needs of the children and to this end requires court oversight of child support agreements. We would undercut the statutory policy if we recognized a stipulation that would require us to ignore the extent of deviation from the guidelines.

We must consider, however, plaintiff's argument that the considerations discussed above do not apply in a case where the noncustodial parent is attempting to reduce his child support obligation. In plaintiff's view, the interests of the children demand that we not allow modification to reduce defendant's child support obligation. Although the argument has some superficial appeal, we cannot accept it.

■ ■ In enacting 15 V.S.A. § 660(b), the Legislature did not distinguish between downward and upward modifications of child support orders. The policy of uniformity of awards controls in either case. Moreover, our recognition of the court's ongoing jurisdiction to modify child support orders, despite the agreement of the parents on an amount, arose in a case where the noncustodial parent sought to reduce his obligation. See *White v. White*, 141 Vt. at 501, 450 A.2d at 1109. Consideration of the interests of the children may require a reduction in a child support obligation in some circumstances.

■ There is a practical aspect to this issue. A clearly excessive child support order may lead, as here, to collection difficulties and periodic returns to court. In 1990, defendant was obligated to pay approximately 56% of his gross income in child support. Once he fell behind, it was virtually impossible to make up the arrearage. His income, as well as plaintiff's, was drained by the costs of the child support litigation. A support amount that, on paper, appears generous to the children becomes illusory if, for reasons related to the excessive size of the payments, collection must be coerced on a regular basis. The court that establishes a child support amount must be satisfied that it is fair and reasonable, so that it can be paid regularly, without further intervention of the legal system.

■ Because it is undisputed that the 1987 order set the child support obligation more than 10% above the guideline amount, the court did not err in modifying the order. See 15 V.S.A. § 660(b).

■ Next, plaintiff argues that the court, once it found a change of circumstances, abused its discretion in lowering defendant's obligation. As this argument recognizes, the court has discretion to determine whether modification of the outstanding award is warranted and, if so, to set the new amount. See *Isham v. Isham*, 152 Vt. 637, 640, 568 A.2d 421, 423 (1989). Under the guideline system, however, it is presumed that a child support award will be based on the guidelines unless the court finds that result "inequitable." 15 V.S.A. § 659(a) (current version of the statute substitutes the term "unfair" for "inequitable"); *Ainsworth v. Ainsworth*, 154 Vt. at 107–08, 574 A.2d at 775.

Plaintiff's main claim of inequity is that the court's modification decision deprived her of the benefit of the 1987 agreement—the restriction on future modification—while retaining her burden—the recharacterization of part of the award as maintenance—so as to shift part of the tax burden onto her. She emphasizes that the agreement states that the restriction on modification was relied upon by the parties in concluding the agreement.[4]

Plaintiff misperceives the court's decision. Under the 1987 agreement, defendant was obligated to pay $316 per week. Based on the current income of the parties, defendant's child support obligation under the guidelines would be $191 per week. The court found the guideline amount inequitable because it failed to account for defendant's extraordinary business expenses. Once these expenses were taken into account, the court recalculated the award to $155 per week. Plaintiff has not challenged this calculation, and we find it fully consistent with the statutory scheme. It results in the conclusion that a fair child support award is less than 50% of what defendant was obligated to pay under the 1987 agreement.

The court found that it could justify an award above the modified guideline amount only by terming the excess a maintenance supplement. See 15 V.S.A. § 661(a) (court shall order maintenance supplement to custodial parent where disparity in financial circumstances results in lower standard of living than the child would have if living with noncustodial parent). It concluded that plaintiff's circumstances warranted a maintenance supplement award of $45 per week. That conclusion is not based on the 1987 agreement; it is based on and is fully supported by the statutory scheme. We see no error in the court's conclusion that if plaintiff is to receive an amount above that calculated for

---

[4] Plaintiff has not argued that the family court could not modify the maintenance amount or that modification of that amount must be based on a different standard. Instead, the thrust of plaintiff's argument is that she should have the benefit of decreased taxes if the overall award is reduced. Apparently because of this argument and the agreement language characterizing part of the award as maintenance solely for tax purposes, the court used the child support modification standard with respect to the whole award. Because plaintiff has not challenged this aspect of the court's analysis, we do not consider whether it is correct.

child support under § 659, it must be characterized as maintenance under § 661. In seeking this excess amount, plaintiff must accept the statutory characterization.

■ ■ Finally, plaintiff challenges the adequacy of the attorney's fees award. The court awarded plaintiff all of her attorney's fees up until defendant filed a motion to modify in February of 1991. Fees incurred after that date were borne by the party who incurred them. The award of fees is a matter of justice and equity within the discretion of the court. See *Nevitt v. Nevitt*, 155 Vt. 391, 399, 584 A.2d 1134, 1139 (1990). We see no abuse of discretion here. As the court's decision showed, defendant had a child support obligation well above that calculated under the statute and prevailed on the motion to modify. Given the circumstances of the parties, it was not unreasonable to require plaintiff to bear her litigation costs associated with the modification motion.

*Affirmed.*