**Peter Q. Harris v. Bonnie L. Harris**

[714 A.2d 626]

No. 96-389

Present: Amestoy, C.J., Gibson, Dooley and Morse, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 8, 1998

*Martha M. Davis*, Windsor, for Plaintiff-Appellant.

*Emily S. Davis, Joanne M. Ertel*, and *Todd C. Steadman* of *Black, Black & Davis*, White River Junction, for Defendant-Appellee.

**Amestoy, C.J.** Father appeals from a family court order that upheld the magistrate's determination of his child support obligation. He claims that there has been no change in circumstances as required by 15 V.S.A. § 660(a) prior to modifying a child support order. He also argues that the magistrate abused her discretion by (1) establishing child support under 15 V.S.A. § 656(d) (where combined available income exceeds guidelines) without extrapolating from the guidelines, (2) ordering child support that exceeds the stated needs of the children, and (3) awarding arrearages. Further, he maintains that the magistrate had no jurisdiction to award attorney's fees. Mother cross-appeals, claiming that the magistrate abused her discretion by denying mother post-evidentiary-hearing attorney's fees when she awarded all other legal fees. We affirm in all respects.

The parties divorced in 1988. The final divorce order granted mother sole physical parental rights and responsibilities of the parties' three minor children and ordered father to pay $1,378.61 per month to mother in child support for the first year. The child support obligation was calculated under the child support guidelines and was to be recalculated in 1989, 1990 and every two years thereafter. The order specified the method to compute child support in the future, including when the parties' combined monthly gross income exceeds the incomes in the child support guidelines. The final order also provided that all disputes arising under any of its provisions would be resolved by alternative-dispute-resolution procedures detailed in the order.

In 1990, the parties submitted the matter of child support to an arbitrator who calculated father's monthly obligation to be $1,984.44 under the 1990 amended child support guidelines. The arbitrator also modified the final divorce order by detailing new procedures for determining future child support obligations under the 1990 guidelines and when the parties' combined available income exceeds the guidelines. After 1990, the parties never agreed on the child support obligation and never had the dispute resolved again by arbitration. In 1994, mother moved in family court to modify child support.

In February 1995, the family court concluded that there had been substantial and unanticipated material changes in circumstances since the final divorce order in 1988. The court found that the alternative-dispute-resolution provision of the final order did not work for recalculating child support because the parties were unable

to cooperate and father had not acted in good faith under the provision. The court further found an unanticipated change in circumstances in the creation of the family court and the office of the magistrate, which was specifically designed to determine child support issues. Accordingly, the court modified the 1988 final divorce order by ordering that disputes regarding child support be submitted to the magistrate rather than be subject to the alternative-dispute-resolution provision of the final order. The court concluded that it was in the children's best interest for support to be reviewed and, if necessary, recalculated pursuant to applicable statutes.

Following an evidentiary hearing, the magistrate issued oral findings and conclusions of law on October 4, 1995, which we briefly summarize. Father, who is a physician, earned $189,367 from employment in 1994, and mother, who is a teacher, earned $20,164.89. Father paid mother $6,000 per year in spousal maintenance and $20,549.16 (12 × $1,712.43) per year in child support. The magistrate concluded that mother was unable to support the children at the standard of living the children would have enjoyed had the parties remained together. See 15 V.S.A. §§ 650, 654 (child support should approximate standard of living children would enjoy if parents lived together). Further, the magistrate determined that she should set the child support under 15 V.S.A. § 656(d) (use of discretion) because she believed that the parties' combined monthly available income exceeded the uppermost level of the guidelines.

On November 16, 1995, the magistrate issued an order establishing child support from the date of mother's motion to modify in February 1994 until the parties' eldest child reached age eighteen in June 1994 at $3,682.15 per month (24% of father's gross income). From June 1994 until August 1996, when the second child reached age eighteen, the order set child support at $3,221.88 per month (21% of father's gross income). From August 1996 until the youngest child reaches age eighteen, the order set child support at 18% of father's gross income. She concluded that this system of determining child support will ensure that the custodial parent has adequate funds to support the children in a lifestyle that they should enjoy year-round, not simply during visitation with their father. The magistrate also calculated arrearages and ordered father to pay mother's attorney's fees of $4,521.60.

Father appealed to the family court, which affirmed the decision of the magistrate. He now appeals from the decision of the family court. Mother cross-appeals the magistrate's decision to award her less than all of her attorney's fees.

## I.

■ Father first claims that there was no showing before the magistrate of a real, substantial and unanticipated change of circumstances, necessary under 15 V.S.A. § 660(a) to modify the child support obligation. Section 660(a) states that "upon a showing of a real, substantial and unanticipated change of circumstances, the court may annul, vary or modify a child support order, whether or not the order is based upon a stipulation or agreement." A change in circumstances is a jurisdictional prerequisite to modification of a child support order. *McCormick v. McCormick*, 150 Vt. 431, 436, 553 A.2d 1098, 1101 (1988).

■ Although father challenges the magistrate's finding of changed circumstances, it was the family court's prior February 1995 decision that found the jurisdictional prerequisite. The court found that the father had not acted in good faith in carrying out the provisions of the 1988 order relating to child support recalculation. We agree that father's bad faith in failing to use the alternative-dispute-resolution procedures mandated in the 1988 order constitutes a change in circumstances sufficient to confer jurisdiction to modify the previous order. Cf. *Galbis v. Nadal*, 626 A.2d 26, 28 (D.C. 1993) (father's unilateral actions in disregard of court order constituted changed circumstances for purposes of modifying custody order); *Babka v. Babka*, 452 N.W.2d 286, 290 (Neb. 1990) (petitioner's unilateral action in claiming dependency tax exemptions contrary to parties' prior agreement and action was material change in circumstances). Consequently, the magistrate's finding of changed circumstances was unnecessary; this finding had already been made before remand from the family court, in a decision that father did not appeal.

The court also found that the creation of the family court and the office of the magistrate, along with the new statutory framework for calculating child support, constituted an unanticipated change in circumstances. See *Schmitt v. Schmitt*, 477 N.W.2d 563, 566 (Neb. 1991) (adoption of child support guidelines constituted material change in circumstances sufficient to justify modification). We need not decide whether this change in circumstances also satisfies 15 V.S.A. § 660(a). One unanticipated change in circumstances is sufficient to confer jurisdiction to modify the child support order.

## II.

Generally, once the jurisdictional threshold of changed circumstances has been met, the court must calculate the parties' combined

available income. "Available income" is defined as gross income minus certain deductions; those relevant in this case would be spousal support, health insurance for the children, FICA taxes, and state and federal income taxes. See 15 V.S.A. § 653(1). The child support guidelines indicate the amount that parents living together with such a combined available income ordinarily spend on their children. See 15 V.S.A. § 654 (secretary of human services shall prescribe such guidelines); Office of Child Support, Child Support Guidelines § 1002 at 1-5 (1990) (table of intact family expenditures on children).[1] The amount of child support indicated on the guideline table is presumed to be the total support obligation of the parents. See 15 V.S.A. § 654. The total support obligation is divided between the parents in proportion to their respective available incomes, and the noncustodial parent pays his or her share to the custodial parent. See id. § 656.

Under the 1990 child support guidelines, the highest combined available income covered on the table is $11,574.99 per month. Section 656(d) provides, "The court may use its discretion in determining child support in circumstances where combined available income exceeds the uppermost levels of the support guideline[s.]" Although father argued before the magistrate and before the family court that the parties' combined available income did not exceed the highest guideline level, he has not raised this issue before us. Here, the premise of father's claim of error is that the parties' available income exceeds the highest income in the guidelines.[2]

## III.

Father's main argument is that the magistrate abused her discretion by failing to extrapolate from the guidelines after concluding that the parties' available income exceeded the highest income in the guidelines.[3] He relies, in part, on *Smith v. Stewart*, 165 Vt. 364, 684

---

[1] New guidelines were issued in 1996 but we refer to the 1990 guidelines, which were in effect for the years involved in this appeal.

[2] Although the magistrate's findings do not include a calculation of combined available income, she concluded that "the family's combined monthly available income is over the existing limit already." Moreover, father's brief estimates his 1994 monthly available income was $10,200. Mother's available income was $1,816.20 with three children. The magistrate's conclusion that the parties combined available income exceeded the guidelines is therefore supported by the record before us.

[3] The dissent maintains that we should enforce the child support provision in the 1988 divorce order. Father argued at oral argument that the magistrate was required to apply a provision in the 1988 divorce order, which provided for extrapolation from the guidelines when the parties' gross income exceeded the highest guideline amount.

A.2d 265 (1996), in which we outlined the requirements for determining child support under 15 V.S.A. § 656(d). In *Smith*, we held that, in exercising its discretion under § 656(d), the court must consider the factors specified in § 659(a) (if guideline amount is unfair, court may adjust child support amount). 165 Vt. at 372, 684 A.2d at 270. "As long as the court considers the statutory factors, makes adequate findings and explains its reasoning in determining the support obligation, its discretion is not limited to adopt or avoid a particular methodology." *Id.* The only other requirement under § 656(d) is that the court's decision must be consistent with the principles behind the guidelines. See *id.* Thus, we did not reject extrapolation from the guidelines, but we do not require the court to extrapolate either.

The statute does not require a particular methodology; accordingly, there was no abuse of discretion in declining to adopt the method of extrapolation. See *Voishan v. Palma*, 609 A.2d 319, 326 (Md. 1992) (legislature did not intend to limit judge's discretion where income exceeds guidelines by requiring mechanical extrapolation); *Nash v. Mulle*, 846 S.W.2d 803, 806 (Tenn. 1993) (where obligor's income exceeds guidelines, court is not limited to applying guideline percentages but retains discretion to set obligation on case-by-case basis).

Father contends that the court should be required to extrapolate from the guidelines because child support orders would then be more consistent with the principles underlying the guidelines. The main purpose of the guidelines is to ensure that children enjoy the same standard of living they would enjoy if their parents were living

---

Because this issue was not raised until oral argument, we need not reach it. *Guiel v. Guiel*, 165 Vt. 584, 585 n.2, 682 A.2d 957, 959 n.2 (1996) (mem.) (arguments raised for the first time at oral argument will not be considered).

In any event, even if father had raised the issue, the 1988 child support provision had been modified by the 1990 stipulation and the 1990 arbitrator's decision. Father never argued for enforcement of the arbitrator's order, *which abandoned the extrapolation formula* and ordered a straight 23.7% of the parties' combined available income exceeding. the highest guideline amount, apparently regardless of the number of children below the age of eighteen. Indeed, the arbitrator's method of calculation is contrary to father's argument that extrapolation is required. Because father never argued for enforcement of the arbitrator's order, we also reject the dissent's argument that we should enforce this order.

The dissent also argues that the 1995 family court order modified only the arbitration provision of the divorce order, not the child support provision. The child support provision had already been modified by the arbitrator, however, and the 1995 family court order specifically states: "the parties should be aware that this Court is not simply substituting the magistrate for the arbitrator. . . . [T]he best interest of the children requires that the statutory process be available to protect the children's rights to support. That process places all issues of child support within the jurisdiction of the Magistrate . . . ."

together. See 15 V.S.A. § 650 (legislative purpose is that child support should reflect standard of living child would have enjoyed if marriage had not dissolved); *id.* § 654 (guidelines shall be based on concept that children should receive same proportion of parental income after separation as they would if parents were living together). The Legislature also intended the guidelines to improve the efficiency of child support adjudication and to eliminate discrepancies in awards for children in similar circumstances. *Smith*, 165 Vt. at 367, 684 A.2d at 267. In this case, the magistrate's order corresponds to all three purposes.

Most importantly, the magistrate found that mother was unable to support the children at the same standard of living they would have enjoyed had the family remained intact. The disparity between the children's lifestyle in the two parties' homes was apparent. For example, the magistrate found that father spends an average of $22 per day per child for food, whereas mother spends an average of about $9 per day per child. Had the family been living together, she found, they would be taking annual vacations, going out to eat more frequently than an average income household and enjoying a lifestyle mother was unable to afford. The magistrate explained that the new child support order provided mother with adequate resources to support the minor children in a lifestyle they should enjoy year-round, not simply during visitation with father. See *Nash*, 846 S.W.2d at 805 (one of primary goals of guidelines is to allow child of wealthy parent to share in very high standard of living); *Bagley v. Bagley*, 632 A.2d 229, 239 (Md. Ct. Spec. App. 1993) (children of affluent noncustodial parent are entitled benefits of affluent standard of living).

Second, the method of calculating child support the magistrate adopted was specifically designed to improve the efficiency of child support adjudication by basing the child support obligation on father's gross income. Father contends that the statute mandates that child support obligations be based on combined available income. Under 15 V.S.A. § 656(d), the court may use its discretion to determine child support "where combined *available income* exceeds the uppermost levels of the support guideline[s]." (Emphasis added.) Accordingly, the court must calculate the parties' available income to determine if this section applies; however, there is no statutory requirement that child support be calculated based on available income once the court determines that the available income exceeds the guidelines.

Here, the magistrate explained at length that calculating father's available income would be difficult for the parties because father has

a combination of W-2 wage income, self-employed consulting income and income from joint spousal investments. His state tax burden in New Jersey would create additional disputes. The fact that father tried to present an expert witness on the issue of his available income only emphasizes the difficulty the parties would have in determining the future child support obligation on this basis. The magistrate concluded that basing child support on available income (1) would be contrary to the purpose of the child support guidelines in providing a predictable and easy method for parents to review child support on an annual basis, and (2) would involve the parties in year after year of litigation. Accordingly, the magistrate designed a method of calculation to prevent future litigation, which she found had been painful and expensive for the family. That litigation has not ended may demonstrate that the magistrate gave the parties too much credit for civility, but it does not demonstrate abuse of discretion.

The third purpose of the guidelines is to eliminate discrepancies between child support orders. Father argues that, without requiring extrapolation from the guideline tables, orders will be inconsistent, and similarly situated obligors will be treated differently. He claims that it is inequitable, for example, to require him to pay 21% of *his gross income* to support two children when the high end of the guidelines calls for 19% of *the family's combined available income*.

Obviously, reducing discrepancies between child support orders is more readily achievable when the guidelines apply than when they do not. And child support orders would be more certain and consistent if the guidelines applied to more cases or if extrapolation were required. Other states have adopted statutes that give less discretion to courts, or at least provide more guidance to courts, than the Vermont statute. See, e.g., *In re Marriage of Patterson*, 920 P.2d 450, 457 (Kan. Ct. App. 1996) (guideline formula for extrapolation does not create rebuttable presumption but court must consider extrapolation amount in exercising discretion); *Schultz v. Schultz*, 675 N.E.2d 55, 59 (Ohio Ct. App. 1996) (presumption is that child support is not less than high-end guideline percentage of parents' income); *Archer v. Archer*, 813 P.2d 1059, 1061 (Okla. Ct. App. 1991) (minimum child support order for high-income parents is high end of guideline); *Stringer v. Brandt*, 877 P.2d 100, 102 (Or. Ct. App. 1994) (guidelines set presumptive cap on child support for high-income parents).

Unlike the statutes in those states, § 656(d) provides no presumptive child support minimum, maximum, or fixed amount. Our Legislature created a system where the magistrate has greater discretion

in determining child support when the noncustodial parent is wealthy. *Smith,* 165 Vt. at 368-69, 684 A.2d at 268. And we have previously upheld § 656(d) child support orders that diverge completely from a guideline extrapolation where the evidence supports such an order. See, e.g., *C.D. v. N.M.,* 160 Vt. 495, 499-501, 631 A.2d 848, 851-52 (1993) (although noncustodial parent's income was over $90,000 per year, court ordered nominal child support because children's income exceeded their need).

Here, even after paying maintenance and child support, father lives on more than twice as much as mother, who is responsible for supporting two children at the standard of living they would have enjoyed had the marriage not been dissolved. There is no error in ordering child support that exceeds an extrapolation from the guidelines in such circumstances, and similarly situated obligors are treated similarly. See, e.g., *Voishan,* 609 A.2d at 326 (awarding more than the extrapolation amount where obligor's income was more than four times that of obligee); *Ochs v. Nelson,* 538 N.W.2d 527, 531 (S.D. 1995) (trial court has discretion to adjust support so that child could partake in some of father's high standard of living while with mother); *Nash,* 846 S.W.2d at 805 (goal that child share in parent's higher standard of living becomes significant when one parent has vastly greater resources than other).

We conclude that the magistrate's decision complied with all the *Smith* requirements. In assessing the children's need and the parents' ability to pay, the magistrate considered the applicable statutory factors, made adequate findings and explained her reasoning. She appropriately exercised her independent judgment pursuant to statutory authority and the guideline principles.

## IV.

Father next argues that, even if the magistrate has the discretion to fashion a child support order without extrapolating from the guidelines, she abused that discretion by (a) ordering child support that exceeds the needs of the children, (b) failing to divide the child support obligation between the parties as required by 15 V.S.A. § 656(a), and (c) basing child support obligations for 1994, 1995 and part of 1996 on father's 1994 tax return. We take each of those claimed errors in turn.

## A.

Father argues that the magistrate abused her discretion by ordering child support that exceeds the needs of the children. At the hearing, mother stated that she needed $5,409 monthly to support the two remaining minor children. The magistrate concluded that her monthly gross income was $2,189.76, leaving a difference of $3,219.24. She ordered father to pay $3,221 in support for the two children, $1.76 more than requested. Father claims that, based on mother's expenditures at the time of the hearing, mother needed a total of only $3,989 monthly. Essentially, he argues that because the children were living on less than requested, they really only needed that lesser amount.

The fact that mother was able to meet the basic needs of the children on less support than she requested "does not mean that [the children] do not have needs that should be addressed by a further increase in child support." *Smith*, 165 Vt. at 369, 684 A.2d at 268. The term "need" refers to the general standard of living of the family. See *id.* "Children are not expected to live at a minimal level of comfort while one or more parents enjoy a luxury lifestyle." *Id.* They "are entitled to a part of the 'fruits of one parent's good fortune after a divorce.'" *Id.* (quoting *In re Marriage of Nimmo*, 891 P.2d 1002, 1007 (Colo. 1995)). Reasonable needs of affluent children may include items that would be frivolous for children of less-well-off parents. See *id.* Accordingly, we find no abuse of discretion in ordering support sufficient to meet the needs of the children as presented by the evidence as opposed to support they had been able to live on in the past. See *Galbis*, 626 A.2d at 31 (child's needs should not be interpreted so narrowly as to deprive child of quality of life enjoyed by noncustodial parent); *Bagley*, 632 A.2d at 239 (children are entitled to every expense reasonable for a child of affluent parent).

## B.

Father argues that the magistrate erred by failing to divide the child support obligation between the parents as required by 15 V.S.A. § 656(a), and by specifically excluding from consideration the first $40,000 of mother's income. We find no error. In cases where the obligation is not established from the guideline table, there is no formula for calculating or dividing child support between the parents. See *C.D.*, 160 Vt. at 500, 631 A.2d at 851 (considering factors and setting nominal child support).

Here, the magistrate considered mother's income as required, see 15 V.S.A. § 659(a)(2) (financial resources of custodial parent), and determined that the children were receiving a fair share of her income because she is the custodial parent and is maintaining a home for them. As long as mother's income remains below $40,000, the magistrate declined to include it in the equation to determine father's obligation. The order also excludes up to $40,000 of father's income earned from consulting to allow him to contribute to the children's college educations. Thus, although the *equation to determine father's obligation* does not include the first $40,000 of mother's income, this income was appropriately *considered* in computing the parental support obligations. See 15 V.S.A. § 656(d).

### C.

Father also argues that the magistrate erred by basing the child support obligation for 1994, 1995 and part of 1996 on father's 1994 tax return. He claims that the undisputed testimony was that his 1995 salary would be less than his 1994 salary. While this testimony may have been undisputed, the magistrate clearly found it not credible as she found that father's income would continue to grow after 1994. Consequently, the 1995 child support obligation should have been based on gross income greater than indicated on the 1994 tax return. Nonetheless, she relied on the 1994 tax return because it was the most accurate and credible evidence before her. Thus, any error that occurred was in father's favor. Although not part of the record in this appeal, a subsequent order indicates that the magistrate's prediction was accurate and that father's 1995 wage income was substantially higher, not lower, than the year before.

### V.

Next, father contends that the magistrate abused her discretion by ordering the new child support obligation effective from the date that mother filed the motion to modify and then awarding over $30,000 in arrearages. Modification of a child support order may take effect at any time on or after the filing date of the motion to modify at the discretion of the trial court. *Towne v. Towne*, 150 Vt. 286, 288, 552 A.2d 404, 405 (1988). We review this determination only for abuse of discretion. See *id.* Here, the magistrate considered the parties' financial circumstances in 1994 and 1995 and the standard of living the children would have enjoyed had the parties remained together.

There was no abuse of discretion in ordering the modification to take effect as of the February 1994 filing date.

Father maintains that mother is unjustly enriched because she had not been spending this amount up to the date of the hearing. As we stated in *Smith*, "It would be unreasonable to expect [mother] to spend more money on the children in anticipation of its coerced receipt from [father]." 165 Vt. at 369, 684 A.2d at 269. Father also claims that the award of arrearages was an abuse of discretion because there was no way he could have predicted such a deviation from the guidelines. He cites no authority and makes no argument to support this claim; thus, we need not consider it. *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 152, 636 A.2d 325, 329 (1993) (Court need not consider assertion in brief that was unaccompanied by facts, law or reasoning).

## VI.

Father argues that the magistrate has no statutory authority to award attorney's fees, and that, even if authority exists, the facts in this case do not justify such an award. Neither the family court nor the office of the magistrate is explicitly authorized by rule or statute to grant attorney's fees. Nonetheless, we have long held that trial courts may make such an award. See, e.g., *Loeb v. Loeb*, 120 Vt. 489, 496-97, 144 A.2d 825, 830 (1958) (although statute fails to explicitly provide for award of attorney's fees in action to modify child support, it is understood to imply provisions necessary to effectuate its object). Absent an award of attorney's fees, a "child might be deprived of the very protection which the statute seeks to afford her." *Id.* at 497, 144 A.2d at 830.

The trial in child support proceedings is generally before the magistrate. The office of the magistrate has jurisdiction to hear and dispose of "proceedings for the establishment, modification and enforcement of child support." 4 V.S.A. § 461(a)(1). The family court has original jurisdiction over child support issues, only upon motion, under certain limited circumstances listed in 4 V.S.A. §§ 462, 463. See also V.R.F.P. 4(q) (except as provided by 4 V.S.A. §§ 462, 463 and V.R.F.P. 4(o), "a magistrate shall hear and determine all proceedings to establish or modify child support"). The family court also hears appeals on the record from decisions of the magistrate. 4 V.S.A. § 465.

"The primary consideration in an award of attorney's fees is the ability of the supporting party to pay and the financial needs of

the party receiving the award." *Smith*, 165 Vt. at 375, 684 A.2d at 272. All of the evidence to determine the financial circumstances of the parties was before the magistrate, as it was necessary to ascertain the child support obligation. We see no reason to require the parties to repeat this trial before the family court for the purpose of awarding attorney's fees. Cf. *Ely v. Ely*, 139 Vt. 238, 242, 427 A.2d 361, 364 (1981) (divorce and similar actions involving financial circumstances of the parties obviate necessity of separate hearing on issue of attorney's fees). We therefore hold that a magistrate has the authority to award attorney's fees.

■ Father next argues that the facts in this case do not justify an award of attorney's fees, and mother cross-appeals, claiming that the magistrate abused her discretion by arbitrarily denying attorney's fees for some of her necessary legal services. The record indicates that the magistrate properly considered mother's need and father's ability to pay attorney's fees. Given that father's income was so much greater than mother's, we conclude that the award was within the discretion of the magistrate. We also reject mother's contention that the magistrate erred by failing to award her all her legal fees. Mother's income is not so minimal that she is unable to bear any of the cost.

Mother also requests attorney fees of $4,101.20 for this appeal. V.R.A.P. 39(f) provides, "Claims for attorneys' fees and other nontaxable expenses arising on an appeal shall be made by motion in the trial court pursuant to Rule 54(d)(2) of the Vermont Rules of Civil Procedure within 14 days after issuance of the mandate in accordance with Rule 41(a) of these rules." Accordingly, we remand this issue.

*Affirmed; mother's request for attorney's fees for this appeal is remanded.*

**Morse, J., concurring.** This case is proof of the old saw, "lawyers argue how many angels can dance on the head of a pin." In the words of Justice Dooley's dissent, "It is easy in this contentious litigation to get lost in the underbrush." 168 Vt. at 29, 714 A.2d at 636. Yet, as I read the majority and dissent, it appears to me that the "underbrush" becomes a tangled thicket.

I fear the judicial debate here will make child support determinations more of a chore than necessary and, while I agree with the Court's result, I write separately to suggest we relax such painstaking oversight of child support decisions. Reasonable discretion was

used in this case, and family courts need not wander through labyrinths to determine child support.

The controlling facts are simple. Father made $190,000 a year, nearly ten times the income of mother. Mother annually earned $20,000, received an additional $6,000 in spousal maintenance, and $20,000 in child support for three children, for a total of less than $50,000 a year, or four times less than father. Despite the parties' initial stipulations, the calculation of child support has been a protracted and acrimonious source of contention. In addition, resort to the alternative-dispute-resolution process has failed to settle their disputes. The need for judicial intervention was apparent.

The magistrate, noting the significant disparity in the parties' respective financial resources as well as their demonstrated inability to establish and abide by a method for calculating support, devised a simplified calculation method aimed at providing the children with a better standard of living when living with mother.

I believe the magistrate's award is a reasonable exercise of discretion under 15 V.S.A. § 656(d). The same result could have been accomplished, in my opinion, by resort to the maintenance supplement provision of Vermont's statutory scheme, 15 V.S.A. § 661(a). This provision provides:

> [T]he court shall order payment of a maintenance supplement to the custodial parent to correct any disparity in the financial circumstances of the parties if the court finds that the disparity has resulted or will result in a lower standard of living for the child than the child would have if living with the noncustodial parent.

Although § 661(a) lists several factors pertaining to the respective financial circumstances of the parties to be considered by the court, including gross income, it requires that only one specific finding be made, namely a lower standard of living for the child. See *Nevitt v. Nevitt*, 155 Vt. 391, 397, 584 A.2d 1134, 1138 (1990). The fact that the children here enjoyed a much higher standard of living when visiting their father is beyond dispute.

Although the parties' original 1988 final order contains a provision essentially waiving mother's right to supplemental maintenance, we held in *Grimes v. Grimes*, 159 Vt. 399, 404-05, 621 A.2d 211, 213-14 (1992), an agreement cannot conclude the interests of the children, nor remove the court's continuing jurisdiction over child support. Thus, notwithstanding the parties' agreement to the contrary, a

custodial parent simply cannot waive the right to supplemental maintenance because the real beneficiaries of such an award are the children.

I also note that in *Grimes* we held that the trial court did not err by concluding that a child support award in excess of the amount calculated under § 659 must be characterized as maintenance under § 661, and while this conclusion was not based on the agreement between the parties, it was based on and fully supported by the statutory scheme. See *id.* at 407-08, 621 A.2d at 215. Therefore, even if the magistrate here calculated an award consistent with the extrapolation method contained in the original divorce decree, she still would have had the statutory authority to adjust the amount upward to reflect father's income so that his children could also benefit from his economic success as they presumably would have had the marriage not dissolved.

I, too, disagree with the dissent's view that there was not a sufficient shift in circumstances to justify a modification of the support obligation. The father's persistent bad faith in undermining mother's ability to enforce their agreement on child support is reason enough to eliminate it and substitute a different standard. The "stipulated" financial package was particularly favorable to father at the expense of mother's resources to support her children. His bad faith efforts to undermine that agreed order, in my view, was a refutation of his original agreement on child support. He cannot, in fairness, discard what he considers a detriment and keep the benefits.

**Dooley, J.,** dissenting. This case went fundamentally off track when the magistrate ignored an unmodified, stipulated provision of the divorce order that specified how support would be calculated if the parties' income exceeded the upper limit of the guidelines. As a result, plaintiff is now paying a third more in support than the order specified, based on a calculation rationale that is not consistent with the purposes or operation of the guidelines. For these reasons, I do not believe the support order can be affirmed. Nor do I believe that we can employ a new rationale on appeal to support the family court decision. Accordingly, I dissent from the Court's plurality opinion and the concurring opinion.[1]

---

[1] I agree with Part VI of the Court's opinion that the magistrate has the power to award attorney's fees, although I would reverse the award in this case and remand it for reconsideration in light of the proper resolution of the merits of the motion to modify child support.

It is easy in this contentious litigation to get lost in the underbrush. It is particularly easy to characterize the case as one of oppressive conduct inflicted by a high earning father on his children and their mother, such that he deserves no protection of the law. There are, however, important issues of law at stake that transcend the circumstances of the parties before us. To shed light on these principles, I emphasize what I believe are the four significant events which should determine our decision.

In 1988, the Orange County Superior Court issued a divorce order based on the stipulation of the parties. Paragraph two of the order dealt extensively with child support. It required plaintiff to pay $1,379 per month in child support for the ensuing year; specified that the amount was based on the child support guidelines; described how the calculation was done; required an annual recalculation by the same method for the next two years and a biannual recalculation thereafter; and specified the effect of a child reaching eighteen years of age or completing high school, "whichever is later." It specifically provided for how the recalculation would be accomplished if the parties' income exceeded the upper limit of the guidelines:

> If, during any recalculation of child support payments, the combined monthly gross income[2] from the child support obligation worksheet (line 2) exceeds the last amount listed in the Table of Intact Family Expenditures, then the parties shall determine the average percentage of increase in the "guideline amount" for the last ten levels on the table, and apply that percentage to the amount by which the combined gross income exceeds that last amount listed.

To reinforce the methodology employed, the order provided a sample calculation based on a specified over-guideline income level. Paragraph ten of the 1988 order specified that any disputes that arise with respect to the order would be worked out first by discussion, then by mediation and finally by arbitration.

The second event occurred a year after the divorce order was issued, when the parties could not agree on the calculation for the first adjustment to be made to the divorce order. That disagreement resulted in an amended final order which submitted much of the

---

[2] At the time of the divorce order, child support calculations were based on the gross incomes of the parents. As discussed in the text, the Legislature modified the system in 1990 to base support calculations on available income.

dispute to an arbitrator and provided that future support amounts would be determined by a specified accounting firm under a methodology established by the arbitrator. The arbitrator did specify a simplified method of making the calculation in cases where the parties' income exceeded the guidelines:

> To the extent that these parties' combined available income exceeds the guideline figures, 23.7% of such additional income shall be the additional family expenditure amount. Each party shall then pay his or her proportional share of the family expenditure in excess of the guideline amount.

Again, directions were supplied to make the calculations, and they specifically provided that if the combined income exceeded that provided in the guideline tables for converting gross income to net income, then "68%" of gross income was considered to be net. I think it is clear that the arbitrator did not create a "new" method in this decision, but instead performed the calculation required by the 1988 order, derived the appropriate percentage of income for the income above the guideline maximum and substituted the percentage for the calculation from which it was derived.[3]

---

[3] There is a small variance between the method provided in the divorce order and the method in the arbitrator's award. The arbitrator's award required plaintiff to pay 23.7% of his available income for three children. The divorce order would have required him to pay 24.1% of available income.

The Court's opinion claims that the arbitrator "abandoned the extrapolation formula," adding underlining to emphasize the point. It also finds that the arbitrator's award shows that extrapolation is not required. The opinion has mischaracterized the arbitrator's award.

There never was an extrapolation order in this case, and the arbitrator never abandoned an order that never existed. The divorce order specified that if the combined income of the parties exceeded the guideline income maximum, a uniform percentage would be applied to the extra income to determine the amount of it that would go to child support. That percentage was to be calculated by averaging the percentages specified in the last ten levels of the guideline table. The arbitrator went to the tables, made the calculation specified by the divorce order and produced a uniform percentage of 23.7%.

The Court's opinion also suggests that the arbitrator's decision deviated from the original support provision by setting a uniform percentage "regardless of the number of children below the age of eighteen." The amended final order that submitted most of the dispute to the arbitrator provided that the recalculation necessary when a child reached eighteen years of age would be performed by the accounting firm. Since there was no specified role for the arbitrator in this calculation, the arbitrator's decision did not discuss the effect of a reduction in the number of children covered by the support order. The arbitrator's decision does not deviate from the original support award.

Because the arbitrator's award and the original divorce order produce the same

The third event was the February 1995 decision of the family court modifying the initial divorce order. That decision was specific as to what it modified. It stated:

## ORDER

It is hereby ORDERED and ADJUDGED:

1. Paragraph 10 is hereby modified to exclude disputes which arise with paragraph 2.
2. Dr. Harris's motion for contempt is DENIED.
3. Each party is responsible for his or her own attorney's fees.

Relying on vague language in the family court's discussion of the case, the Court's opinion states that the family court also modified paragraph two to eliminate the provision on how to calculate support if the parties' income is over the guidelines. That conclusion is impossible to reconcile with the order, which very clearly states that only paragraph ten is modified. Moreover, no grounds to modify paragraph two were presented to the family court; defendant's argument was that plaintiff refused to submit to the alternative-dispute-resolution mechanisms provided in paragraph ten.

The fourth event is the decision of the magistrate, which ignored the method the parties had agreed upon for determining the support level should the parties' income exceed the guideline limit. Rather than employing the agreed-upon formula that used the guideline amount up to the maximum level and 23.7% of net available income thereafter, she adopted a whole new method that imposed a much higher support order on plaintiff.

There is no question that the support calculation provisions in the original divorce order, the amended order and the arbitrator's decision are valid. As the court's opinion emphasizes, the family court has discretion in setting support when total income goes beyond the guidelines. These orders fall well within that discretion. The magistrate and family court should have enforced these orders; their failure to do so was error.

As I understand it, the plurality opinion has three answers to the failure to enforce the original orders and calculate support pursuant

result, the claim in the Court's opinion that father "never argued for enforcement of the arbitrator's award" raises a meaningless technicality.

to them.[4] First, it states that plaintiff failed to raise their applicability below and cannot do so here. Both in the family court and in this Court, plaintiff argued in his brief that the magistrate could not modify the original support order to create an arrearage. Furthermore, plaintiff argued before the magistrate that there were no grounds to modify the original order.[5] I think this is sufficient preservation to allow us to consider the issue. The reason why we refuse to address issues for the first time on appeal — because the trial court was denied the opportunity to deal with them, see *Duke v. Duke*, 140 Vt. 543, 545, 442 A.2d 460, 462 (1982) — does not apply where the issue was before both the magistrate and the trial court at least to resolve the arrearage. In any event, plaintiff clearly preserved with respect to the arrearage, and the Court has ignored the argument in affirming the arrearage order.[6] Second, the plurality opinion asserts that (1) the family court had jurisdiction to modify the method of calculation of the support order in February 1995, and (2) the family court modified paragraph two by deleting it, and plaintiff then failed to appeal that order. I set out the order of the family court above. It explicitly modifies only paragraph ten of the divorce order. Indeed, the language chosen — modifying paragraph ten "to exclude disputes which arise with paragraph 2" — states clearly that the court intended that disputes over the amount of child support would

---

[4] The concurrence comes up with a fourth answer — that there was a sufficient shift in circumstances to justify modification based on father's "persistent bad faith." If one agrees with the plurality opinion, this ground adds nothing because the family court modified the child support calculation on this basis, and plaintiff never appealed. If, however, I am right that the family court never modified the child support calculation provision, the point of the concurrence is irrelevant because neither the family court nor the magistrate modified the support calculation on this ground. The court has discretion in determining whether there has been a change of circumstances, see *Gates v. Gates*, 168 Vt. 64, 67-68, 716 A.2d 794, 797 (1998), and we have no idea whether either forum would have found a change of circumstances to modify the child support calculation based on the theory in the concurrence. Unless the concurrence is prepared to hold that the family court was required as a matter of law to modify the support amount based on its theory, the alternative ground cannot be used to affirm the magistrate's calculation.

[5] In his request for findings to the magistrate, plaintiff proposed a finding that no "real, substantial and unanticipated change of circumstances existed on February 8, 1994 supporting a modification of child support pursuant to 15 V.S.A. § 660(a), (b) or (c)."

[6] The plurality opinion statement that father raised the applicability of the 1988 order for the first time at oral argument is not consistent with the record. After explaining the 1988 order, appellant's initial brief, submitted months before the oral argument, argued that the magistrate could not modify the support amount based on increases in plaintiff's income because the divorce decree anticipated changes in income and specified how they would be dealt with.

continue to be governed by paragraph two. Moreover, the only grounds for modification presented and accepted was that the alternative-dispute-resolution process had broken down. There was no suggestion of changed circumstances with respect to the support calculation. See *Kilduff v. Willey*, 150 Vt. 552, 555, 554 A.2d 677, 679 (1988) (inability of parents to get along did not present change of circumstances to modify physical custody and visitation order, but created sufficient change of circumstances to modify award of joint legal rights and responsibilities order).

It is telling that the magistrate did not rely on a change of circumstances determination of the family court in deciding to impose a new support calculation method at variance with paragraph two of the divorce order. In her oral decision, the magistrate stated:

> the court does find [that a] real, substantial and [un]anticipated [change of] circumstances was supported at the time of filing in February 4 . . . of the motion to modify, and that at that, the court finds that the change there is simply the change in the increase of the plaintiff's income substantially over the last time child support was reviewed, as well as the subsequent change on June 16, 1994, when Michael graduated from high school.

Although neither the plurality opinion nor the concurrence address the merits of this decision, I think it is clear that it is erroneous because the divorce order explicitly specified the effect of changed income and the graduation from high school of one of the children.

I am at a loss to see how the vague sentence cited by the plurality opinion can have any effect on paragraph two, in light of an explicit order that did not affect that paragraph at all, except to confirm that it would govern future disputes. The plurality opinion appears to read the sentence as saying that the magistrate could ignore paragraph two, but the arbitrator could not. In fact, it probably means the opposite because, as the court stated, the magistrate is bound "as in all cases, by law," and the arbitrator probably had more freedom.

Finally, the plurality states that we cannot enforce paragraph two of the original divorce order because it has been replaced by the arbitrator's award through the terms of the amended order. At best, this is an argument for enforcing the arbitrator's award; it does not support a decision to enforce neither. In any event, the formula stated in the original divorce order and that stated in the arbitrator's award reach the same result.

I believe there is no justification for deviating from the method of calculating plaintiff's support obligation to which defendant stipulated and the court ordered in settlement of the parties' divorce. Since I cannot conclude that the error is unpreserved, I would reverse and remand for a child support award consistent with the divorce order.

Even if there were no preexisting order to which this award must conform, I would reverse the award. As the plurality opinion acknowledges, we held in *Smith v. Stewart*, 165 Vt. 364, 372, 684 A.2d 265, 270 (1996), that any method used for calculating support awards for families with incomes above the guideline maxima "must reflect the principles behind the guidelines." In two respects, the child support order on appeal is inconsistent with the principles behind the guidelines.

The first is that the award is based on plaintiff's gross income rather than on his net available income. In 1990, the Legislature modified the calculation of support orders based on parents' income to use "available income," rather than "gross income." Compare 15 V.S.A. § 653(1), (9), as added by 1989, No. 220 (Adj. Sess.), § 16 with 15 V.S.A. § 653(5), (9), as added by 1985, No. 180 (Adj. Sess.), § 1. The purpose of this change was to give parents the benefit of FICA taxes and state and federal income taxes before considering income, recognizing that tax burdens vary even for persons with the same gross income. Thus, the statute now provides that the "total support obligation" of the parents is based on the "amounts derived from the support guideline appropriate to the parties' available income." 15 V.S.A. § 653(9).

In this case, the magistrate refused to use available income for the support calculation. Based on the percentage of income established as the support award, the use of gross income had the effect of increasing plaintiff's support burden by roughly a third over that established in the divorce order. Moreover, when two parents have taxable income, the use of pre-tax income to calculate a support award has the effect of discriminating against the higher-income parent who normally will be in a higher tax bracket and pay a higher share of income in taxes.[7]

The magistrate's only justification for using gross income was that it was complicated to determine plaintiff's after-tax income because

---

[7] The use of gross income also allows the concurrence to claim that the mother's income was only a quarter of the father's income, even though the gap in available income was much smaller.

of his financial circumstances.[8] The Legislature necessarily introduced this complexity when it required the use of after-tax income amounts. The magistrate's rationale was wholly inconsistent with a principle of the guideline system.[9]

The second inconsistency is of even greater concern. Although defendant earned steady income as a teacher, the magistrate ordered that this income not be considered to the extent it is less than $40,000 per year. Because defendant's salary is well below the threshold, the order exempted all her income from consideration.[10]

The applicable statute provides that "the total child support obligation shall be divided between the parents in proportion to their respective available incomes," *id.* § 656(a), and requires the noncustodial parent to pay his or her share to the custodial parent. This is an essential principle of the guideline system. Indeed, it appears that the Legislature intended for this subsection to apply at every income level because it contains fundamental requirements for support orders that are universally applicable.[11]

---

[8] The arbitrator eliminated this complexity by calculating plaintiff's available income as a percentage of gross income and requiring that the percentage, 68%, be used for plaintiff's income in the future. In view of the parties stipulation to the arbitration order, I believe that the magistrate could have used that percentage unless it was shown to be substantially erroneous.

Alternatively, the magistrate could have required the parties to exchange tax returns so each could determine after-tax income. Although plaintiff objected to sharing tax returns so as not to disclose the financial circumstances of his current wife, the returns were produced and were before the magistrate.

[9] As the plurality opinion states, the magistrate found that use of gross income was required by the guideline principle that support calculation must be easy and predictable. I cannot accept the view, endorsed by this Court, that a general guideline principle can be used to override a specific legislative mandate on how to calculate support obligations.

[10] At the time of the magistrate's hearing, defendant had begun a new job paying her $29,000 per year.

[11] The plurality construes § 656(a) and (d) as exempting cases where available income exceeds the guideline maxima from the requirement of (a) that the support obligation be divided based on the respective incomes of the parents. I believe this construction is wrong. Statutes which are part of a common scheme, that is, in pari materia, must be read together. See *State v. Fuller*, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995) (in pari materia is a statutory construction technique that should be used in appropriate cases). Section 656(a) contains its own exceptions, and there is nothing in its language to suggest that cases under § 656(d) are also exempt from its mandate. Nor is there any reason to exempt (d) cases from the mandate of (a). Thus, I believe that § 656(a) requires the mandate to base the support order on the income of both parties even if their income exceeds guideline maxima.

In reaching the opposite conclusion, the plurality opinion relies on an irrelevant provision that allows the family court to deviate from an amount determined by the

The only rationale the magistrate gave for ignoring the regular earned income of defendant is that she also ignored certain intermittent consulting income of plaintiff. She failed to find the amount of plaintiff's net consulting income,[12] but concluded that it would be wholly dedicated to the college tuition of the parties' oldest child. Plaintiff had previously assumed paying this child's tuition above his support obligation. I believe that the failure to consider defendant's income was inconsistent with the principle of the guideline statute and cannot be affirmed.

In 1988, these parties settled the method for calculating child support, and nothing has changed to make that method unjust or inappropriate. There is no doubt that these parties have been unable to get along, and plaintiff bears the brunt of the responsibility for failure to abide by alternative-dispute-resolution mechanisms that were intended to work out their differences, cheaply and informally. Unfortunately, the family court's response was to greatly increase plaintiff's child support obligation, without justification, rather than enforcing the underlying order and creating new and effective enforcement methods for the future. Because I think this response was unjust, and at variance with important aspects of the child support guideline system the Legislature has adopted, I dissent.[13] I am authorized to state that Justice Allen joins in this dissent.

---

guidelines based on a number of factors, including the financial resources of the custodial parent. 15 V.S.A. § 659(a)(2). This is not a case involving deviation from a guideline amount.

[12] The magistrate found that plaintiff's income from consulting was $15,000 per year, but the money had gone to plaintiff's employer and did not provide additional income to plaintiff. Plaintiff changed jobs just before the magistrate's hearing and, in the new employment arrangement, would be able to keep the consulting income. Plaintiff estimated the income to be about $23,000 per year with about half of that for expense reimbursement. The magistrate accepted the gross receipts figure but did not find how much of that was payment for services.

[13] I cannot accept Justice Morse's urging that "we relax such painstaking oversight of child support decisions," 168 Vt. at 26, 714 A.2d at 635, in the context of this case. As Justice Morse recognized in dissent in *Ainsworth v. Ainsworth*, 154 Vt. 103, 117, 574 A.2d 772, 781 (1990), the Legislature has "constrained" the discretion of the trial court to deviate from the statutory scheme. Thus, the guideline system is "designed to give child support determinations a measure of predictability and equality" rather than basing decisions on the family court's "individual judgment as to what is fair, given all the facts and circumstances of each case." *Id.* at 120, 574 A.2d at 782.