NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 97

No. 2015-414

| | |
|---|---|
| Debbie A. (Shattuck) Leitgeb | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Family Division |
| | |
| Robert Leitgeb | May Term, 2016 |

M. Kathleen Manley, J.

Debbie A. Shattuck, Pro Se, Springfield, Plaintiff-Appellee.

Robert Leitgeb, Pro Se, Littleton, New Hampshire, Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **ROBINSON, J.**    This case requires us to consider whether and under what circumstances a child support order can compel an obligor parent whose income is below the self-support reserve to make monthly payments toward outstanding arrearages on a child support surcharge.  Father appeals pro se from a family court order affirming a magistrate's decision to deny his motion to modify a child support order that related solely to outstanding arrearages owed for surcharges.  He argues that because his limited income from social security disability benefits is below the self-support reserve, he should not be ordered to make $50 monthly payments toward outstanding surcharges.  We reverse and remand.

¶ 2.    The facts are largely undisputed. The parties were divorced in 1989. Father was ordered to pay child support for the parties' minor child, who turned eighteen in July 1998. Although father did not thereafter incur any new child support obligations, he continued to owe a substantial arrearage and surcharges.[1] In January 2005, the child support magistrate issued a child support order reflecting a judgment of arrears in the amount of $11,424.01. That judgment reflected past due child support principal in the amount of $5627.78 and accumulated surcharges of $5796.23. The court ordered wage withholding from any employer in the amount of $50 per month, although the order noted that father had a pending application for social security benefits. The court further ordered that surcharges would continue to accrue on the judgment at the statutory rate.

¶ 3.    In May 2008, father filed a pro se petition to modify his child support order. By that time, the child support principal arrearage was paid, but accrued surcharges remained. Father was living on social security disability benefits. In January 2009, after a hearing, the magistrate denied father's motion to vacate or set aside the surcharge under 15 V.S.A. § 606(d). The court left in place the existing child support order requiring father to pay $50 per month toward the outstanding surcharges.

¶ 4.    In April 2011, father filed another pro se motion seeking modification. This time rather than requesting termination of his obligation to pay the arrears altogether, his motion sought a reduction of his monthly payment toward the outstanding arrearage. In that motion, he represented that he was unemployed, disabled, and unable to meet his medical expenses. In an entry order, the child support magistrate ruled that father had not established a real, substantial, or unanticipated change of circumstances, nor any other legal basis for relief. The court noted

_____

[1] A surcharge is assessed "[i]n lieu of interest on unpaid child support which has accrued under a child support order," and is computed at a rate set by statute. 15 V.S.A. § 606(d)(1).

2

that in 2005, when it issued an order requiring him to pay $50 per month toward the arrearages, father was unemployed and not receiving social security disability benefits. It further noted that it had denied a similar motion in January 2009, after a contested hearing.

¶ 5. In September 2011, father again filed a pro se motion, this time seeking discharge of his surcharge arrearage obligation altogether. Father filed this motion after the effective date of 15 V.S.A. § 606(d)(2), which provides: "In the interest of justice, the court may discharge all or part of a surcharge that accrued subsequent to the date of the last judgment upon a finding that since that date, the obligated parent became unable to comply with the underlying support obligation." In his motion, father cited a decrease in his social security disability payments and his struggle to pay rent. The magistrate denied father's motion to modify because father had not shown an unanticipated change in circumstances as required by 15 V.S.A. § 660. In particular, the change in his Social Security Disability payments was not sufficient to trigger a modification. The magistrate further denied father's motion under 15 V.S.A. § 606(d)(2) on the ground that father had not shown that since the last judgment he had become "unable to comply." However, in December 2011, the magistrate did enter a new, modified child support order establishing a surcharge arrearage balance of $3967.41, maintaining the $50 per month payment schedule, and reducing the rate of accrual of continuing surcharges to 0.5% per month, or 6% per year. The Superior Court, Family Division, upheld this order on appeal.

¶ 6. In September 2013, father filed another motion seeking reduction of his monthly obligation to repay arrearages to $0 and discharge of the surcharges. The magistrate rejected the motion noting that at that time father had both earned income and Social Security income and that his total monthly income exceeded his expenses such that he was able to make the $50 per month payment.

¶ 7. Finally, in February 2015, father filed another pro se motion to modify the child support order relating to his outstanding surcharges. This is the motion that led to this appeal. Father alleged that his income had decreased, he was disabled, and the child support order in question was issued more than three years prior. His requested relief was a decrease in his monthly obligation to $0.

¶ 8. The magistrate held a contested hearing. Although father indicated that the sole relief he was seeking was discharge of the surcharge arrearage pursuant to 15 V.S.A. § 606(d)(2), most of his testimony was directed at his inability to pay the $50 per month. It was not clear that he understood that the motion he filed suggested two alternate forms of relief: one that would discharge some or all of the surcharge arrearage pursuant to § 606(d)(2), and one that would leave the accrued surcharge judgment intact, but would reduce or eliminate his monthly payment obligation.

¶ 9. At the hearing, the Office of Child Support indicated that father's remaining surcharge arrearage was approximately $1917. Based on father's testimony, the magistrate found that father had $976 per month in Social Security Disability benefits, in addition to fuel assistance and food stamps. His monthly expenses for rent, utilities, prescription medications, and sundries totaled $935 per month, leaving him with $41 per month from which he could pay the $50 arrearage payment. The magistrate noted that $50 of his monthly expenses was a payment toward past due rent; the magistrate reasoned that if he reduced this amount by $9 per month, he would be able to make the arrearage payment.

¶ 10. With respect to father's motion to discharge his remaining accrued surcharges in the interest of justice pursuant to 15 V.S.A. § 606(d), the magistrate concluded that the statute authorizes discharge of only surcharges that accrued <u>subsequent to the date of the last judgment,</u>

4

upon a finding that the obligated parent had become unable to comply with the underlying support obligation since that date. Noting that father had no outstanding support obligation or support arrearage (as opposed to surcharge arrearage), the magistrate concluded that no surcharges had accrued since the last judgment, and the court was not authorized to discharge surcharges that had accrued prior to that time and that were reduced to judgment in that order. Accordingly, the magistrate concluded that § 606(d) did not give the court authority to reduce father's arrearage balance.

¶ 11.    The magistrate went on to consider the possibility of reducing or eliminating father's monthly payment obligation, as opposed to discharging the underlying judgment. The magistrate noted that father's living circumstances had changed on account of a recent divorce and that his income had fallen. However, the magistrate found that his modest monthly income was still sufficient to meet his modest expenses and allow him to continue paying $50 per month toward his surcharge arrearages. In addition, the magistrate found that father's consistent payment of the $50 per month over the course of years supported the finding that he was, in fact, able to afford the payment. For these reasons, the magistrate declined to reduce father's monthly surcharge arrearage payment.

¶ 12.    On appeal, the family division affirmed. With respect to father's request for relief "[i]n the interest of justice" under 15 V.S.A. § 606(d)(2), the court affirmed the magistrate's conclusion that the statute did not apply, as none of the remaining obligation had "accrued subsequent to the date of the last judgment." As to the request for modification under 15 V.S.A. § 660, the court affirmed the magistrate's finding that father's circumstances had changed, and upheld the magistrate's conclusion that father was capable of making the payments. Father appealed.

¶ 13. On appeal, father challenges the magistrate's denial of his request to modify to zero his monthly payment obligation.[2] He argues that the magistrate's order requiring him to make monthly payments toward his arrears despite the fact that his income is undisputedly below the self-support reserve runs afoul of 15 V.S.A. § 656(c), and that the magistrate clearly erred in concluding that he was able to pay $50 per month.[3]

¶ 14. We will neither set aside the magistrate's findings unless they are clearly erroneous, nor its conclusions if reasonably supported by the findings. Tetreault v. Coon, 167 Vt. 396, 399-400, 708 A.2d 571, 574 (1998). But our review of questions of law is non-deferential and plenary. Mitchinson v. Mitchinson, 173 Vt. 483, 484, 788 A.2d 23, 24 (2001) (mem.).

¶ 15. We agree with father that the magistrate failed to apply the proper standard under 15 V.S.A. § 656(c) in ordering him to pay $50 per month toward his arrearages. The statute relating to computation of a parent's support obligation provides that if a noncustodial parent's available income is less than the self-support reserve, the court shall use its discretion in determining support and shall require payment of a nominal support amount. 15 V.S.A.

---

[2] Father does not directly challenge the magistrate's and superior court's refusal to discharge the outstanding arrearages pursuant to 15 V.S.A. § 606(d)(2). Because no surcharges have accrued since the prior judgment in December 2011, the magistrate and superior court concluded that § 606(d)(2) does not offer father any recourse.

[3] Father also argues that the magistrate erred in concluding that he had failed to show a real, substantial, and unanticipated change of circumstances as a prerequisite to modifying the order, noting that 15 V.S.A. § 660(a)(1) authorizes the court to waive the requirement of a showing of a real, substantial, and unanticipated change of circumstances if the child support order has not been modified by the court for at least three years. We do not understand the magistrate to have concluded that father failed to show a real, substantial, and unanticipated change of circumstances. Rather, the magistrate identified critical changes in father's financial and living circumstances and evaluated his request to modify his monthly payment obligation on its merits. For that reason, we need not address father's argument on this point.

§ 656(b). However, with respect to <u>arrearages</u>, as opposed to ongoing support, the statute provides:

> If the noncustodial parent owes arrears to the custodial parent, the court shall not order the payment of arrears in an amount that, by itself or in combination with the noncustodial parent's share of the total support obligation, would reduce the noncustodial parent's income below the self-support reserve, unless the custodial parent can show good cause why the payment of arrears should be ordered despite the fact that such an order would drop the noncustodial parent's income below the self-support reserve. Such arrears shall remain the responsibility of the noncustodial parent and be subject to repayment at a time when the noncustodial parent's income is above the self-support reserve.

15 V.S.A. § 656(c).

¶ 16. The self-support reserve is currently defined in statute as "the needs standard established annually, and calculated at 120 percent of the U.S. Department of Health and Human Services poverty guideline per year for a single individual." 15 V.S.A. § 653(7). It was previously defined by statute as "the needs standard established annually by the commissioner for children and families which shall be an amount sufficient to provide a reasonable subsistence compatible with decency and health." 15 V.S.A. § 653(7) (2009) (as amended by 2011, No. 119 (Adj. Sess.) § 3). The applicable regulation of the Office of Child Support continues to define the self-support reserve as an amount intended to provide a child support payer with reasonable subsistence compatible with health and decency. Child Support Guidelines § 1, Code of Vt. Rules 13 161 001, http://www.lexisnexis.com/hottopics/codeofvtrules. The regulation explains, "The Self-Support Reserve is deducted from the noncustodial parent's available income, the amount remaining is compared to the noncustodial parent's child support obligation to determine if he or she has sufficient income to meet the obligation." <u>Id</u>.

¶ 17. The statutory scheme reflects a legislative judgment that an obligor parent should be required to make at least a nominal payment toward a <u>current</u> parental support obligation,

7

even when that payment causes that parent's resources to dip below the self-support reserve, but a strong presumption against an order requiring current payment toward arrearages to the extent that payment drops the obligor parent's resources below the self-support reserve. The statute does not altogether prohibit an order requiring the obligor parent to make payments toward an arrearage that cause that parent's resources to dip below the self-support reserve, but puts a burden on the obligee parent to show good cause. Under this statutory scheme, an order requiring monthly payments toward an arrearage that reduces an obligor parent's resources to less than the self-support reserve is an exception to the general rule.

¶ 18. At the time of the magistrate's May 2015 order, the self-support reserve was $1177. The magistrate found that father's income from his Social Decurity Disability benefits was $976—$201 below that amount. Neither the magistrate's order nor the family division's order on appeal reflects consideration of the self-support reserve or 15 V.S.A. § 656(c). The magistrate made no findings that mother had shown good cause why the payment of arrears should be ordered notwithstanding father's monthly income below the self-support reserve. Nor did the magistrate make any findings from which we might infer a determination of good cause, such as a finding that, notwithstanding his low monthly income, father has access to significant assets, or a finding that for some other reason this case is extraordinary. For that reason, we remand so that the magistrate can evaluate father's motion in light of 15 V.S.A. § 656(c).

¶ 19. Although our conclusion on this point resolves this appeal, we briefly address father's challenges to the magistrate's factual findings concerning his ability to pay, as those findings may be relevant to the magistrate's consideration on remand. Father argues that the magistrate's finding that he had an ability to pay $50 per month was clearly erroneous for two reasons. First, he notes that his monthly income, as found by the magistrate, was $976—$201

less than the statutory self-support reserve. He argues that this fact is inconsistent with the magistrate's conclusion that father had an ability to pay the $50 per month. Second, he argues that the magistrate relied heavily on the fact that father had consistently paid the $50 per month in concluding that he had the ability to pay. However, father argues that the funds were automatically withdrawn from his Social Security Disability benefits, and he therefore had no choice in the matter—his consistent payment cannot be viewed as evidence of an ability to pay.

¶ 20. Father's arguments on both points are well-taken. As noted above, the self-support reserve reflects a legislative assessment of the resources sufficient to provide a reasonable subsistence compatible with decency and health. Although the court may order an obligor parent to make payments toward an accrued arrearage even though the obligor's resources fall under the self-support reserve, any finding of an ability to pay by an individual who is unemployed, disabled, and has fewer resources than the self-support reserve protects, requires particular explanation. Father's uncontroverted testimony in this case is not inconsistent with this presumption. Although the expenses that he itemized amounted to slightly less than his social security disability benefit, he also testified to difficulty paying for his prescription medications, accumulated debts for medical and other expenses in excess of $1000 due to his inability to pay, his reliance on the local food pantry in addition to food stamps to meet his nutritional needs, and his inability to pay for the various sundries and costs of living.

¶ 21. Likewise, the magistrate's reliance on father's consistent payment of the $50 per month as evidence of his ability to pay is unsupported by the record. The funds were withheld from father's Social Security disability benefit. He had no choice in the matter. His consistent payment does not necessarily reflect an ability to pay this sum on top of his most basic living expenses; at most, it means that some other cost of living has consistently given way. The fact

that father has continued to subsist notwithstanding these deductions does not demonstrate an ability to pay, especially when his uncontradicted testimony is that he has accrued substantial debts to medical providers and others as a result of his financial constraints.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice